**GENERAL MILLS, INC., Appellee,**

v.

**KELLOGG COMPANY, Appellant,**

**KELLOGG COMPANY, Appellant,**

v.

**GENERAL MILLS, INC., Appellee.**

No. 87–5190.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1987.

Decided July 20, 1987.

**624**

Frederick P. Furth, San Francisco, Cal., for appellant.

Dean A. Olds, Chicago, Ill., for appellee.

Before LAY, Chief Judge, WOLLMAN and MAGILL, Circuit Judges.

LAY, Chief Judge.

Kellogg Company (Kellogg) appeals from the district court's [1] denial of its motion to preliminarily enjoin General Mills, Inc. (General Mills) from using the name OAT-MEAL RAISIN CRISP on a new breakfast cereal. Kellogg claims that General Mills' use of OATMEAL RAISIN CRISP infringes on Kellogg's rights in the registered trademark APPLE RAISIN CRISP in violation of sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) (1982). We affirm the district court's denial of the preliminary injunction.

## Background

Both Kellogg and General Mills manufacture and sell food products, including ready-to-eat breakfast cereals. Since 1983, Kellogg has marketed a breakfast cereal under the name APPLE RAISIN CRISP. Trademark registration for the APPLE RAISIN CRISP mark was obtained by Kellogg in March, 1986. General Mills has recently developed a new breakfast cereal, which it plans to distribute and sell under the name OATMEAL RAISIN CRISP. Upon learning of General Mills' intent, Kellogg wrote to General Mills in early 1987 and expressed its belief that General Mills would infringe on Kellogg's trademark rights by selling the new cereal under the name OATMEAL RAISIN CRISP.

In April 1987 General Mills filed a declaratory judgment action seeking a determination that General Mills' use of OAT-MEAL RAISIN CRISP does not infringe on Kellogg's APPLE RAISIN CRISP trademark. Two days later, Kellogg filed an action under federal and state law claiming infringement of its trademark and associated trade dress.[2] Kellogg then filed a motion for a preliminary injunction which, after receiving briefs and other materials and after holding a hearing, the district court denied. This expedited appeal followed.

## Discussion

In *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc), this court explained the standards under which the extraordinary remedy of a preliminary injunction may be granted. The moving party must demonstrate: (1) that it is threatened with irreparable harm; (2) that this harm outweighs any injury which granting the injunction will inflict on other parties; (3) that the movant will probably succeed on the merits; and (4) that the public interest favors an injunction. *See Dataphase*, 640 F.2d at 113. As we emphasized in *Dataphase*, care must be exercised in balancing the equities, especially since a preliminary injunction motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision. *See id.* Rather, the essential inquiry in weighing the propriety of issuing a preliminary injunction is whether the balance of other factors tips decidedly toward the movant and the movant has also raised

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, presiding.

2. Kellogg originally filed its action in the Eastern District of Michigan, but the case was transferred to the District of Minnesota pursuant to 28 U.S.C. § 1404(a) and consolidated with General Mills' action.

questions so serious and difficult as to call for more deliberate investigation. *Id.* The district court has broad discretion when ruling on requests for preliminary injunctive relief, and on appeal this court must uphold the district court's balancing of the equities unless its findings of fact are clearly erroneous, it has committed an error of law, or that discretion has been abused. *See Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.,* 815 F.2d 500, 503 (8th Cir.1987). After review of the record and the applicable law, we hold that the district court did not abuse its discretion in denying preliminary injunctive relief.

■ Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that Kellogg can demonstrate a likelihood of consumer confusion. *See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.,* 633 F.2d 746, 753 and n. 7 (8th Cir.1980). The district court thus correctly concluded that irreparable harm to Kellogg could be presumed, assuming that Kellogg could in fact show probable success in proving a likelihood of consumer confusion.

Fundamental to Kellogg's appeal is its claim that the district court erred as a matter of law in stating that APPLE RAISIN CRISP is a generic mark. Kellogg argues that its mark is not generic but is arbitrary or suggestive, and that the district court erroneously analyzed the three component words of the APPLE RAISIN CRISP mark individually rather than considering the three words together as creating a unitary mark. We agree with Kellogg to the extent that we believe that APPLE RAISIN CRISP is not a generic mark.

■ Whether a mark is entitled to trademark protection is initially approached by categorizing the mark as either generic, descriptive, suggestive, or arbitrary. *Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc.,* 780 F.2d 1324, 1329 (8th Cir.1985). A mark is designated as generic in recognition of its role in consumer minds as the common descriptive name

for a type, genus, or class of goods, *see WSM, Inc. v. Hilton,* 724 F.2d 1320, 1325 (8th Cir.1984), and such a mark is precluded from trademark protection under any circumstances, *Miller Brewing Co. v. G. Heileman Brewing Co., Inc.,* 561 F.2d 75, 79 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). A descriptive mark, on the other hand, designates characteristics, qualities, effects or other features of the product and can be protected only if shown to have become distinctive through acquiring secondary meaning. *Co-Rect,* 780 F.2d at 1329. Suggestive marks, requiring imagination to reach a conclusion as to the product's nature, and arbitrary marks, which are inherently distinctive, are entitled to broad trademark protection without establishing secondary meaning. *Id.*

Although we emphasize that we do not pass upon the merits of Kellogg's case, under the test set out above the generic name for Kellogg's product would seem to be "breakfast cereal", not "apple raisin crisp." However, we find that the district court's statement that APPLE RAISIN CRISP is a generic mark did not conclude its reasoning. As stated, if the "mark" is generic Kellogg is not prejudiced by the district court's statement because there could be no protection for the mark whatsoever and the matter would be concluded without need for further analysis. *Miller Brewing Co.,* 561 F.2d at 79. As Kellogg recognized, the district court's analysis in fact details the highly descriptive nature of APPLE RAISIN CRISP. *See Henri's Food Products, Inc. v. Tasty Snacks, Inc.,* 817 F.2d 1303, 1305–06 (7th Cir.1987) ("TAS–TEE" is not generic term for kind, type, or genus of salad dressing; word "tasty" is descriptive of a characteristic of many types of salad dressings). The district court's further analysis thus shows that it treated the mark as descriptive as well as generic. In finding that the component words of APPLE RAISIN CRISP are in common usage and function to describe the ingredients and nature of the product, the district court did not clearly err. *See Skinner Mfg. Co. v. Kellogg Sales Co.,* 143

F.2d 895, 898–99 (8th Cir.), *cert. denied,* 323 U.S. 766, 65 S.Ct. 119, 89 L.Ed. 613 (1944) ("Raisin Bran" descriptive of ingredients of breakfast food that mixed raisins and bran flakes); *Eagle Snacks, Inc. v. Nabisco Brands, Inc.,* 625 F.Supp. 571, 580–81 (D.N.J.1985) ("Honey Roast" nuts conveys immediate idea of ingredients and qualities of product). The district court did not discuss whether it believed that Kellogg had shown that it would probably be able at trial to demonstrate secondary meaning in APPLE RAISIN CRISP. Even assuming that some degree of secondary meaning could be shown, however, in order to tip the balance of equities toward a grant of injunctive relief, Kellogg retains the burden of showing that OATMEAL RAISIN CRISP probably infringes on the APPLE RAISIN CRISP mark.

To succeed on the merits Kellogg, as the party alleging trademark infringement, must demonstrate that General Mills' use of OATMEAL RAISIN CRISP creates a likelihood of confusion, deception, or mistake on the part of an appreciable number of ordinary purchasers as to an association between Kellogg and General Mills due to their common use of the words "raisin crisp." *See* 15 U.S.C. §§ 1114(1)(a), 1125(a); *Toro Co. v. R & R Products Co.,* 787 F.2d 1208, 1214 (8th Cir.1986); *WSM,* 724 F.2d at 1329. In weighing Kellogg's probable success in showing likely consumer confusion, the district court properly weighed several foundational factors relevant to this determination, including: (1) the strength of the owner's mark; (2) the similarity between the owner's and the alleged infringer's marks; (3) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (4) the type of product, its cost, and the conditions of purchase; (5) the products' competitive proximity; and (6) incidents of actual confusion. *See SquirtCo v. Seven-Up Co.,* 628 F.2d 1086, 1091 (8th Cir.1980); Restatement of Torts § 729 (1938). No single factor is dispositive; numerous factors must be weighed and considered by the court. *SquirtCo,* 628 F.2d at 1091.

Kellogg contends that the district court erred in failing to consider APPLE RAISIN CRISP's distinctiveness as a unitary mark, in refusing to give conclusive weight to its trademark registration, and in giving undue weight to General Mills' evidence of third party marks that use the word "crisp." We disagree. First, in finding that APPLE RAISIN CRISP is likely a weak mark, the district court did take into account the mark's overall effect. Determining that a mark is weak means that consumer confusion has been found unlikely because the mark's components are so widely used that the public can easily distinguish slight differences in the marks, even if the goods are related. *Telemed Corp. v. Tel-Med, Inc.,* 588 F.2d 213, 219 (7th Cir.1978). *See Beech-Nut, Inc. v. Warner-Lambert Co.,* 346 F.Supp. 547, 549 (S.D.N.Y.1972), *aff'd* 480 F.2d 801 (2d Cir. 1973) (in denying preliminary injunctive relief sought by "BREATH SAVERS" breath mints against "BREATH PLEASERS," small variations between marks likely to make enough of a difference to defeat infringement claim). Second, under the Lanham Act, registration of a trademark is indeed prima facie evidence of the validity of the registration, the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate of registration. *See* 15 U.S.C. § 1057(b). However, a mark's registered status is only an evidentiary tool, and the fact of registration does not affect the plaintiff's ultimate burden of proof in an infringement action. *Freedom Sav. & Loan Ass'n v. Way,* 757 F.2d 1176, 1182 n. 4 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 12–13 (2d Cir.1976) (when mark has some descriptive qualities, not every competing use may be excluded even when mark is properly registered). Third, although Kellogg argues that evidence of third party registrations without accompanying proof of the extent and length of actual use is of slight evidentiary value, evidence of third party usage of similar marks on similar goods is admissi-

ble and relevant to show that the mark is relatively weak and entitled to a narrower scope of protection. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259–60 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980), *quoting* Restatement of Torts § 729 comment g (the greater the number of identical or more or less similar trademarks already in use, the less is the likelihood of confusion). The district court did not rely solely on evidence of third party registrations, but also looked at evidence of other currently used marks which incorporate words identical or similar to the word "crisp." Given the evidence of actual third party use and of the mark's descriptive nature, the district court did not clearly err in finding that APPLE RAISIN CRISP is likely a relatively weak mark.

■ Kellogg next argues that the district court erred in finding that OATMEAL RAISIN CRISP is not confusingly similar to APPLE RAISIN CRISP. The use of identical, even dominant, words in common does not automatically mean that two marks are similar. *Freedom Sav. & Loan,* 757 F.2d at 1183. Rather, in analyzing the similarities of sight, sound, and meaning between two marks, a court must look to the overall impression created by the marks and not merely compare individual features. *See, e.g., Sun Banks of Fla., Inc. v. Sun Fed. Sav. and Loan Ass'n,* 651 F.2d 311, 317–18 (5th Cir.1981); Restatement of Torts § 729 comment b. Acknowledging that there are some similarities between the marks, the district court nevertheless found, after comparing the respective color schemes, lettering styles, and box designs, that the two marks likely are different enough to avoid consumer confusion. In properly focusing on the total effect conveyed by both marks, the district court did not clearly err in finding no confusing similarity between them.

■ Kellogg also attacks the district court's finding that in adopting the name OATMEAL RAISIN CRISP, General Mills showed no intent to trade on Kellogg's accumulated reputation and goodwill in the APPLE RAISIN CRISP mark. It argues that General Mills' bad faith is evident from the fact that promotional fliers were sent to distributors encouraging them to replace APPLE RAISIN CRISP on store shelves with OATMEAL RAISIN CRISP. Kellogg also contends that any apparent statistical decrease in sales of APPLE RAISIN CRISP is due merely to natural market fluctuations. Knowledge of another's product and an intent to compete with that product is not, however, equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion. *Yoo-Hoo Chocolate Beverage Corp. v. A.J. Canfield Co.,* 229 U.S.P.Q. (BNA) 653, 663 (D.N.J.1986). The district court did not clearly err in finding that because General Mills had conducted extensive research and development before introducing OATMEAL RAISIN CRISP, it was not likely that General Mills intended to pass off its products as those of Kellogg. Nor did the court clearly err in finding it unlikely that General Mills or any other company would try to capitalize on the reputation of a product with apparently declining sales.

In addition, Kellogg contends that because breakfast cereals are inexpensive impulse purchases, consumers pay little attention to house marks and that even if they do notice house marks, the display of General Mills' mark on boxes of OATMEAL RAISIN CRISP is not prominent enough to avoid confusion. In finding that both parties are widely recognized in the food industry and that both have appended their house marks in a sufficiently prominent manner so that consumers would likely distinguish between the two products' sources, the district court properly stood in the shoes of "the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Scott v. Mego Int'l, Inc.,* 519 F.Supp. 1118, 1133 n. 17 (D.Minn.1981). The district court's finding that present purchasing conditions are not likely to create consumer confusion was not clearly erroneous.

Kellogg agrees with the district court's findings that APPLE RAISIN CRISP and OATMEAL RAISIN CRISP are ready-to-eat breakfast cereals that directly compete with each other and that no actual confusion between the two was shown. As Kellogg recognizes, proof of actual confusion is relevant to an ultimate finding of likely confusion but is not essential to demonstrating trademark infringement. *SquirtCo*, 628 F.2d at 1091. We believe that in weighing all of the foundational factors without giving undue emphasis to any, the district court did not abuse its discretion in finding that Kellogg had failed to show probable success in proving likelihood of consumer confusion.

Finally, we turn briefly to the district court's finding that the public interest would not be served by allowing Kellogg "to appropriate for its exclusive commercial use words which retain generic or primary meaning." *Team Central Inc. v. Xerox Corp.*, 223 U.S.P.Q. (BNA) 1058, 1061–62 (D.Minn.1984). As we indicated above, the district court's use of the word "generic" does not dilute its overall appraisal at this stage of the proceedings that the mark's descriptive features make it relatively weak. In light of our previous discussion of the district court's analysis, we also find here no abuse of discretion.

### Conclusion

The district court did not abuse its discretion when it determined, on balance, that Kellogg had failed to sustain its burden to show that under *Dataphase* it was entitled to preliminary injunctive relief.[3] Sufficient evidence in the record supports the district court's determination that Kellogg did not show that it would suffer irreparable harm absent a preliminary injunction. If there is in fact trademark infringement here, Kellogg will have a full opportunity to demonstrate that infringement at a plenary trial on the merits. The district court's order

**3.** We also find no abuse of discretion in the district court's finding that on balance the potential harm to Kellogg from lost profits and other expenses nearly equals the substantial out-

denying preliminary injunctive relief is affirmed.

of-pocket losses and future profits General Mills claims it will suffer from a preliminary injunction.