798 F.Supp. 1419 (1992)
NLC, INC. d/b/a Lenco, Inc. a Missouri Corporation, Plaintiff,
v.
LENCO ELECTRONICS, INC., Defendant.
No. 1:92CV34SNL.
United States District Court, E.D. Missouri, Southeastern Division.
July 23, 1992.
*1420 *1421 David G. Beeson, Buerkle, Beeson & Ludwig, Jackson, Mo., Charles B. Haverstock, Haverstock, Garrett & Roberts, St. Louis, Mo., for plaintiff.
J. Michael Ponder, Oliver Law Firm, Cape Girardeau, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
This case is currently before the Court on plaintiff's motion for preliminary injunction. For the reasons set forth fully below, the Court grants the motion.
Plaintiff NLC, Inc., doing business as LENCO, Inc., filed this action seeking a court order to restrain LENCO Electronics, Inc., formerly known as ICON, Inc., from using the LENCO name. On April 16, 1992, the Court denied plaintiff's motion for temporary restraining order. The Court held a hearing on April 23, 1992 to determine whether a preliminary injunction should issue. The Court having considered the pleadings, the testimony of the witnesses, the documents introduced into evidence and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law for purposes of determining whether a preliminary injunction should issue.

FINDINGS OF FACT
Plaintiff NLC, Inc. is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the City of Jackson. In 1989, NLC, Inc. purchased LENCO, Inc. as part of its reorganization in bankruptcy.
Defendant LENCO Electronics, Inc. formerly known as ICON, Inc., is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the City of Cape Girardeau, Missouri. It began using the name LENCO Electronics, Inc. sometime in 1989 several months after it purchased certain assets from plaintiff.
LENCO, Inc. has been a going concern in Jackson, Missouri for 35 years. LENCO owns the United States trademark registrations for LENCO issued December 31, 1957, registration number 656,365; LENCOSPOT, issued October 2, 1979, registration number 1,125,526, issued October 2, 1979; LENCO & DESIGN issued May 17, 1988, registration number 1,488,008.
The LENCO company went into bankruptcy in 1989. Plaintiff NLC purchased the LENCO company from the previous owner as part of the bankruptcy reorganization. Before its bankruptcy, LENCO had manufactured electronic devices used in the television broadcast industry. At the time of NLC's purchase, LENCO primarily manufactured electric welders used in heavy industry and associated accessories, but continued to manufacture some broadcast equipment. Joe Alvarez, a member of the NLC partnership, testified that the partnership paid $2.9 million for LENCO's trademark, patents and assets. The assets were few and the partnership was interested mainly in the well-established LENCO name, its trademarks and patents. After the sale, LENCO's patents and trademarks were transferred to NLC, Inc.
NLC is now the owner of the LENCO trademarks. All are valid, remain in full force and effect under 15 U.S.C. § 1051(b) and are "prima facie evidence of the validity of the registration, registrant's ownership of the mark and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate."
NLC, itself and through its predecessors-in-interest, has expended large sums of money in adopting, advertising and promoting its LENCO mark through extensive and substantial advertising, promotion of its business, and the sale of goods and rendering services under the trade name and trademark LENCO. Through this, the name and mark have become widely known to the public as indicating the source or origin of services and goods of plaintiff and its related and affiliate divisions and companies. The goodwill associated with the name LENCO and the trademark is a valuable asset.
NLC took special care to rebuild the reputation for credit-worthiness of LENCO *1422 since its bankruptcy. The business manager was instructed to pay all invoices on or before the due date.
Several months after NLC purchased LENCO, it reorganized and "mothballed" the LENCO electronics division. On February 7, 1991, NLC sold certain electronics inventory and assets to ICON, Inc. The bill of sale sets out the assets sold:
1. Raw material components inventory of the Lenco electronics plant (as is located in the raw material cage area), and
2. Such work-in-progress items of Lenco Electronics as were agreed, and
3. The electronics finished goods and demo equipment of Lenco Electronics as per list attached hereto, and
4. Such electronics test equipment as per the list attached hereto.
5. Product documentation and cabinets therefore.
6. Service manuals for the products.
7. Right to the telephone number 314/ 243-3147.
Bill of Sale, Plaintiff's Exhibit E. ICON did not purchase any trademarks or patents or the good will associated with the LENCO name.
In June 1991, ICON was dissolved and the former ICON began to do business as LENCO Electronics. The name of LENCO Electronics, Inc. was registered with the Secretary of State and Robert Henson, president of ICON, testified that he changed the name of LENCO Electronics to help sell his product and improve business. In Henson's opinion, ICON bought the good will and right to use the LENCO name along with the assets it purchased from LENCO. LENCO Electronics began to use a logo with LENCO in all capital letters in the same typestyle as that of LENCO, Inc.
On November 11, 1991, David Hoelscher, president of NLC received a letter dated November 6, 1991 from Mr. Henson, President of ICON, "to whom it may concern" stating that ICON, Inc. would be known as LENCO Electronics as of October 1, 1991. That was the first time plaintiff learned of defendant's name change. Mr. Hoelscher contacted Mr. Henson that day and demanded that ICON cease use of the LENCO name. Mr. Henson refused.
After the name change, LENCO began to receive mail, checks, equipment and facsimile transmission intended for the new LENCO Electronics, Inc. LENCO's own vendors and suppliers were confused and thought that LENCO and LENCO Electronics were one and the same. Certain suppliers became irritated with LENCO about past due invoices to LENCO Electronics. Plaintiff explained they were separate companies.
Other companies in the United States use the name Lenco. A power supply business in Illinois, a construction company in St. Louis and a Lenco in Nebraska makes plastics products. The location and type of business of another company using the LENCO name would determine whether NLC would pursue another company for the use of the name.
Defendant's use of LENCO Electronics is a clear infringement of the trademark LENCO. The LENCO Electronics logo mimics the LENCO logo with the same style of print. The visual simulation of LENCO Electronics is so close as to confuse all but the most knowledgeable and discriminating persons. LENCO Electronic's intent is to trade on the goodwill of the mark LENCO. Both LENCO and LENCO Electronics sell their products across the country. The fact that the location of both is in Southeast Missouri is an additional factor that indicates that LENCO Electronics will be confused with LENCO and thereby trade on the good will of LENCO. LENCO Electronic's use of the mark will impair LENCO's good will and creates a likelihood of confusion with LENCO by the public.
Actual confusion between LENCO and LENCO Electronics has occurred. Since LENCO Electronics began using that name, LENCO has received letters, facsimile transmissions, equipment, checks and numerous telephone calls intended for the former ICON.
LENCO Electronics was notified as soon as LENCO became aware of the use of the *1423 name and before the lawsuit was instituted, that LENCO objected to the use of the name. Nonetheless, defendant did business under the name LENCO Electronics.
LENCO Electronic's acts, if continued, will cause irreparable injury to LENCO.

CONCLUSIONS OF LAW
An action arising under the Trademark Act as amended (the Lanham Act, 15 U.S.C. § 1051, et seq.) vests jurisdiction in the United States District Court under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b). This Court has jurisdiction over the subject matter and the parties herein.
Venue is proper in the United States District Court where all defendants reside and where the acts of trademark infringement occur. 28 U.S.C. § 1391(b) and (c). Venue in this suit is proper in the Eastern District of Missouri, Southeastern Division.
Plaintiff has alleged that defendant's use of the LENCO mark constitutes unfair competition under federal statute and state common law, trademark infringement under federal law and trademark dilution under state law.
Congress has expressly granted the district courts with "the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the registrant of a mark registered in Patent and Trademark Office." 15 U.S.C. § 1116.
The Missouri State Legislature has also provided for injunctive relief to remedy infringement of marks registered in Missouri or valid at common law and to remedy the likelihood of injury to business reputation or dilution of a mark or name. Mo.Rev. Stat. § 417.061.
The Eighth Circuit set out the requirements for the issuance of a preliminary injunction in Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." Id. Of these four factors, no single factor determines the outcome. Rather, the court must weigh the factors in light of the particular circumstances of a given case. In other words,
If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, when the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.
Dataphase, 640 F.2d at 113.
The standard for granting preliminary relief set forth in Dataphase is equally applicable in the case of alleged trademark infringement. General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir.1987).
A trademark represents intangible assets such as reputation and good will and a showing of irreparable injury can be satisfied if it appears that plaintiff can demonstrate a likelihood of consumer confusion. General Mills, 824 F.2d at 625 (citing (Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.), 633 F.2d 746, 753 and n. 7 (8th Cir.1980)).
The initial step in determining whether a mark is entitled to trademark protection is to categorize the mark as either generic, descriptive, suggestive or arbitrary. General Mills, 824 F.2d at 625; Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc., 780 F.2d 1324, 1329 (8th Cir.1985). A generic mark is one using the "common descriptive name for a type, genus, or class of goods and such a mark is precluded from trademark protection under any circumstances." General Mills, 824 F.2d at 625; see also WSM, Inc. v. Hilton, 724 F.2d 1320, 1325 (8th Cir. 1984). A descriptive mark "designates characteristics, qualities, effects or other features of the product and can be protected *1424 only if shown to have become distinctive through acquired secondary meaning." General Mills, 824 F.2d at 625; see also Co-Rect, 780 F.2d at 1329. Suggestive marks require imagination to reach a conclusion as to the product's nature. "An arbitrary mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached." Little Caesar Ent., Inc. v. Pizza Caesar, Inc., 834 F.2d 568, 571 (6th Cir. 1987).
The Court finds that LENCO is an arbitrary or fanciful trademark because the name is completely unrelated to the product it represents. LENCO's name is "an arbitrary embellishment primarily adopted for purposes of identification and individuality." See Prufrock Ltd. v. Lasater, 781 F.2d 129, 133 (8th Cir.1986). As an arbitrary mark, LENCO is inherently distinctive and is entitled to trademark protection without establishing secondary meaning." Co-Rect, 780 F.2d at 1329.
Having found the LENCO mark protectable, the Court must now consider the Dataphase factors as they relate to this trademark infringement, dilution and unfair competition action.
Plaintiff must show that defendant's use of LENCO Electronics "creates a likelihood of confusion, deception, or mistake on the part of an appreciable number of ordinary purchasers." General Mills, 824 F.2d at 626. The Court must weigh several "foundational factors" relevant to this determination including:
(1) the strength of the owner's mark;
(2) the similarity between the owner's and the alleged infringer's marks;
(3) the alleged infringer's intent to "pass off" its goods as those of the trademark owner;
(4) the type of product, its cost, and the conditions of purchase;
(5) the products' competitive proximity; and
(6) incidents of actual confusion.
Id.

1. Strength of the owner's mark

The parties dispute who is entitled to use the LENCO mark. Defendant admits that it did not purchase the LENCO trademark from plaintiff, but it contends, nonetheless, that it purchased the good will of the electronics division when it purchased its physical assets. In support of that, the defendant points to the fact that the work in progress, finished demonstrator equipment, service manuals, and other documentation acquired from NLC all bore the name LENCO. Additionally, the defendant points to the fact that the customer files and the telephone number formerly used by the LENCO electronics division also were transferred.
The Court is not persuaded. Defendant purchased certain assets with the LENCO name and may sell those products as goods made by LENCO, however, defendant did not purchase the LENCO trademark. Plaintiff sold certain physical assetsnot a going concernto defendant. The bill of sale clearly and plainly sets out what defendant purchased. The bill of sale does not include the LENCO trademark and defendant admits it did not purchase it. Defendant cannot extract the goodwill from the trademark as the goodwill of the company is inextricably intertwined with its name. "[T]here is no property in a trademark except as a right appurtenant to an established business or trade, when it becomes an element of good will." Atlas Beverage Co. v. Minneapolis Brewing, 113 F.2d 672, 675 (8th Cir.1940). Defendant did not purchase the right to the LENCO name. Plaintiff is owner of the LENCO mark and there is no evidence of sale, assignment or license of the mark to defendant.
The Court has already found that the LENCO mark is an arbitrary or fanciful mark, which contributes to the strength of the mark. Plaintiff owns the rights to the registered trademark, and it was not among the assets sold to defendant. Under the Lanham Act, registration of a trademark is prima facie evidence of the *1425 validity of the registration, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate of registration. 15 U.S.C. § 1057(b). Nonetheless, "a mark's registered status is only an evidentiary tool, and the fact of registration does not affect the plaintiff's ultimate burden of proof in an infringement action." General Mills, 824 F.2d at 626. Plaintiff, and its successors in interest, have used the LENCO mark for thirty-five years. Defendant introduced evidence that other companies have also used the same name. While that might weaken the mark somewhat, there is no evidence of third-party usage of similar marks on similar goods. The Court finds that LENCO remains a strong mark.

2. Similarity between owner's and alleged infringer's marks

"The existence of confusing similarity, or the determination that confusion is likely, is a question of law within the exclusive jurisdiction of the court." Gaston's White River Resort v. Rush, 701 F.Supp. 1431, 1437 (W.D.Ark.1988) (citation omitted). "The court in comparing the logos, must place itself in the consumer's position and undertake a task of `mental analysis and visual reaction.'" Id. The dominant feature is "that which is most noticeable and most unavoidably attracts the attention of the public." Id. at 1438. Verbal features normally dominate an accompanying design. Id. In this case, the dominate feature of both marks is the name "LENCO."
A comparison of the LENCO mark and the LENCO Electronics' mark shows they are virtually identical in lettering style. Both use the word LENCO in all capital letters in the same typestyle. LENCO is surrounded by a line drawing resembling a globe or "the world." LENCO Electronics simply has added the words "Electronics, Inc." to the end of LENCO's mark, and eliminated "the world" design. These changes are not sufficient to distinguish the marks. The effect is to create the impression that LENCO Electronics is a division of or otherwise affiliated with LENCO. Defendant has done this without plaintiff's approval and against its will.

3. Alleged infringer's intent to "pass off" its goods as those of the trademark owner

Defendant's president freely admitted that his purpose in changing the name of his company was to trade on the good will and reputation of LENCO. His position is that, although not included in the bill of sale, ICON purchased the good will and the right to use the LENCO name along with the physical assets purchased from LENCO. His company sold the finished LENCO products with accompanying brochures and the like, and now has begun to manufacture new products to which the name LENCO is affixed. Defendant is permitting, if not encouraging, an inference that LENCO Electronics is part of or affiliated with LENCO.

4. Type of product, its cost, and conditions of purchase

The products involved are broadcast electronics equipment. These are not "inexpensive impulse purchases" where consumers are unlikely to notice labels. It is questionable, nonetheless, whether consumers would likely distinguish between the two products' sources. Defendant is intentionally marketing to plaintiff's former customers products to replace or complement plaintiff's electronics products. Although, as defendant pointed out, a local customer might note the distinction, these products are sold nationwide. A television station in Albuquerque, New Mexico, for example, is unlikely to note the difference between LENCO in Jackson, Missouri and LENCO Electronics in Cape Girardeau, Missouri, particularly given the nearly identical logos, and the fact that a customer may now purchase from one the identical product it previously purchased from the other.

5. Products' competitive proximity

Both plaintiff and defendant are located in Southeast Missouri and market their respective products nationwide.
*1426 Although plaintiff did manufacture broadcast electronics equipment for many years, it does not currently manufacture or market that type of product. Plaintiff retains the patents to certain types of equipment and may re-enter that market at some point, but currently has no plans to do so, according to its president, Mr. Hoelscher. As a result, plaintiff and defendant are not currently in direct competition. This factor alone, however, does not indicate a lack of potential customer confusion.

6. Incidents of actual confusion

"Although actual confusion is not the test for trademark infringement, it is evidence of the likelihood of confusion." Gaston's White River Resort v. Rush, 701 F.Supp. 1431, 1438 (W.D.Ark.1988). Plaintiff submitted evidence of actual confusion: misdirected mail, checks, facsimile transmissions. In at least one instance, a supplier was irritated with plaintiff for failing to pay on time, when the bill actually belonged to defendant. The Court notes such occurrences could be particularly harmful to a business, such as plaintiffs, trying to rebuild its reputation for creditworthiness after bankruptcy. Defendant contends that any confusion was merely as a result of clerical error through a customer's failure to update its files. The Court is not persuaded. The reason for the failure to update files likely stems from the virtually identical names of the two companies and cannot be blamed on mere carelessness.
For all the foregoing reasons, the Court concludes plaintiff has shown a likelihood of consumer confusion.
The use of the LENCO name by defendant has, is and will continue to violate the common law right of plaintiff in and to the mark LENCO and to the goodwill it symbolizes. Defendant has infringed and is infringing plaintiff's trademark by its use of LENCO Electronics in violation of the Lanham Act, 15 U.S.C. § 1114(a) and Mo.Rev.Stat. § 417.061. Defendant's use of the name LENCO Electronics on its new products is a false designation of defendant's products and false and misleading representation in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Thus, plaintiff has shown a threat of irreparable harm and that it is likely to prevail on the merits at trial. As the newcomer, defendant must avoid adoption and use of a mark that would cause confusion with a previously established mark. Better Business Bureau of Kansas City Advertising Club, Inc. v. Chappell, 307 S.W.2d 510, 515 (Mo.App.1957). Therefore, the balance of equities and the public interest in avoiding confusion weigh in favor of plaintiff. Accordingly, plaintiff is entitled to injunctive relief from defendant's trademark infringement and unfair competition.

ORDER
In accordance with the Memorandum entered herein this day,
IT IS HEREBY ORDERED that plaintiff's motion for a preliminary injunction is GRANTED.
IT IS FURTHER ORDERED that Defendant and its agents, servants, employees, partners, co-venturers, associates, and any and all persons in privity with or in concert or participation with, through, or under them, at first during the pendency of this action, and thereafter perpetually are enjoined and restrained:
(1) From using or having used in any manner or form, including as part of any word, name, mark, or design, the term LENCO or any colorable limitation thereof, on or in connection with the manufacturing or marketing of any products, including electronic equipment, or in the formation of, incorporation of, operation of, control of, or participation in any corporation intended to engage in or engaged in the manufacturing or marketing of any products, including electronic equipment, or on or in connection with the advertising, promoting, offering of, or sale of any products, including electronic equipment, or on or in connection with any other goods or services identical or similar to those advertised, promoted, offered, or sold by NLC, Inc. and its subsidiaries under the name or mark LENCO.
*1427 (2) From holding itself out as the owners of, or a corporation authorized to use, or as owner of a corporation which owns or is authorized to use, the term LENCO in or as part of a corporate or trade name, or as being owner of or a corporation owned by, sponsored by, associated with, related to, or connected in any way whatsoever with Plaintiff or its subsidiaries, or as providing goods and/or services endorsed or promoted by plaintiff or its subsidiaries, or as being owner of or a corporation under the supervision or control of plaintiff or its subsidiaries.
(3) From committing any other act which causes or is likely to cause members of the trade or the public to believe that defendant's goods and/or services are those of plaintiff or its subsidiaries, that they are sponsored by, associated with, related to, or connected in any way whatsoever with plaintiff or its subsidiaries, or that they are endorsed or promoted by plaintiff or its subsidiaries, or that they are under the supervision or control of plaintiff or its subsidiaries, and from otherwise competing unfairly with the plaintiff and its subsidiaries in any manner.