1 F.3d 1253
 28 U.S.P.Q.2d 1152
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CORTEX CORPORATION, Appellant,
v.
W.L. GORE & ASSOCIATES, INC., Appellee.
 No. 92-1468.
 United States Court of Appeals, Federal Circuit.
 June 21, 1993.
 
 Before ARCHER, MAYER, and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 DECISION
 
 1
 Cortex Corporation appeals from a decision of the Trademark Trial and Appeal Board sustaining the opposition of W.L. Gore & Associates, Inc. (Gore). The Board determined that Cortex's application for the mark CORTEX would likely cause confusion with Gore's GORE-TEX mark. Because the record does not support a likelihood of confusion, this court reverses.
 
 OPINION
 Background
 
 2
 Cortex filed application Serial No. 601,216 on May 29, 1986 to register CORTEX for "computer related products, namely computer programs." Gore opposed registration of the mark under section 2(d) of the Lanham Act, 15 U.S.C. Sec. 1052(d) (1988). Gore alleged that the public would confuse Cortex's mark with Gore's GORE-TEX trademark for insulated wires and cables and filtration apparatuses.*
 
 
 3
 In a 2-1 decision, the Board found a likelihood of confusion and granted Gore's motion for summary judgment. The Board reasoned that these "very similar" marks would appear on closely related products. The Board discounted the complete lack of actual confusion during twelve years of concurrent use of the marks.
 
 Discussion
 
 4
 Likelihood of confusion is a question of law. E.g., Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1565, 4 USPQ2d 1793, 1797 (Fed.Cir.1987). Although this legal conclusion is usually based upon underlying findings of fact, Olde Tyme Foods, Inc. v. Roundy's Inc., 961 F.2d 200, 202, 22 USPQ2d 1542, 1544 (Fed.Cir.1992), this case comes to the court as a result of the TTAB's rulings on the parties' respective motions for summary judgment. The Board resolved no factual dispute and the parties agree that no factual dispute exists. Accordingly, the only issue before the court is the legal question whether, based on the undisputed facts, a likelihood of confusion exists.
 
 
 5
 In re E.I. Du Pont De Nemours & Co., 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973), sets forth the factors for determining the likelihood of confusion. The relevant Du Pont factors in this case are:
 
 
 6
 (1) The similarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.
 
 
 7
 (2) The similarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.
 
 
 8
 (3) The similarity of established, likely-to-continue trade channels.
 
 
 9
 (4) The conditions under which, and buyers to whom, sales are made.
 
 
 10
 (5) The nature and extent of any actual confusion.
 
 
 11
 (6) The length and nature of any concurrent use without evidence of actual confusion.
 
 
 12
 (7) The fame of the prior mark.
 
 Dissimilarity of Trademarks
 
 13
 The Board erred in finding that the trademarks at issue are "very similar." Although they rhyme, the two marks are dissimilar in appearance, the additional "e" and the hyphen in GORE-TEX distinguish the marks. The hyphen clearly splits Gore's mark into two separate parts, "GORE" and "TEX." The mark looks like the combination of two terms. "CORTEX," on the other hand, appears as a single, indivisible word.
 
 
 14
 The marks differ significantly in connotation. CORTEX is suggestive of the brain, especially in the context of Cortex's computer program products. The GORE-TEX mark has no such connotation. GORE-TEX highlights the Gore company name. Taking into account differences in appearance, connotation, and commercial impression, the two marks are not similar.
 
 Dissimilarity of Products
 
 15
 The Board also erred in finding that the parties' products are closely related. Cortex's application covers computer programs, specifically computer assisted software engineering (CASE) programs. CASE programs help write other software. This type of software is very sophisticated. Gore does not sell computer software products, nor computers or microprocessors at all. Gore sells only wires, cables, and filtration equipment under its GORE-TEX mark.
 
 
 16
 Although Gore's wire and cable products may qualify as the most basic of computer hardware, these products are general purpose products, useful in many industries. Gore does not design, package, or otherwise promote, its wire and cable products specifically for use with computers. This single potential use of Gore's products as computer hardware does not establish a close relationship to Cortex's sophisticated software products. The products are simply different.
 
 
 17
 Channels of Trade, Sale Conditions and Purchasers
 
 
 18
 The differences between the parties' marks and products are even more significant in light of how Cortex and Gore do business. Cortex licenses its CORTEX computer programs at rates between $50,000 and $150,000 per year for each CPU on which the licensee wishes to run the program. Each license is generally the result of months of negotiations. In addition, the sophistication of Cortex's computer software requires extensive instructions and ongoing servicing. Licensees do not purchase CORTEX software on an impulse, but only after deliberate and careful consideration. These licensees know exactly with whom they are dealing.
 
 
 19
 Gore also sells its products directly and develops close customer relationships. Gore often engineers its wire, cable, and filtration equipment products to meet the unique needs of each customer. This customization requires extensive, personalized sales and engineering relationships between Gore and its customers. Gore's customers also know with whom they are dealing.
 
 
 20
 Because both Cortex and Gore "sell their goods to discriminating purchasers under conditions calculated to insure care in discerning the source or origin of the goods," this court discerns little chance for confusion. See Industrial Nucleonics Corp. v. Hinde, 475 F.2d 1197, 1199, 177 USPQ 386, 387 (CCPA 1973). Thus, trade channels and the nature of these purchasers make confusion of product source very unlikely.
 
 Fame of Gore's Mark
 
 21
 Gore invokes the fame of its mark to support a likelihood of confusion. This court agrees with the Board that the fame of Gore's GORE-TEX mark does not extend beyond fabric and clothing products. The record does not show that this fame extends to Gore's wire, cable and filtration equipment products. Accordingly, this factor does not make confusion more likely.
 
 Lack of Evidence of Actual Confusion
 
 22
 Despite the twelve years of concurrent use at the time of the Board's consideration (now fifteen years), the millions of dollars in sales enjoyed by each party, and the existence of common customers, Gore showed no evidence of actual confusion. The absence of actual confusion underscores that the dissimilarity of marks, products, and trade channels greatly reduces or negates any possibility of confusion. Although proof of actual confusion is not necessary to show likelihood of confusion, e.g., Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1571, 218 USPQ, 390, 396 (Fed.Cir.1983), its absence in this case strongly reinforces the conclusion compelled by the other relevant Du Pont factors. The CORTEX mark, when used on the goods in Cortex's application, is not likely to be confused with the use of the GORE-TEX mark on wires, cables, and filtration equipment.
 
 Conclusion
 
 23
 After weighing the relevant Du Pont factors, this court discerns no likelihood of confusion. For this reason, this court reverses the Board's grant of summary judgment to opposer Gore. Because there is no likelihood of confusion and no genuine issue of material fact, this court also reverses the Board's denial of Cortex's motion for summary judgment.
 
 Costs
 
 24
 Costs are awarded to Cortex Corporation.
 
 
 
 *
 Gore asserted U.S. Registration No. 946,316 for the mark GORE-TEX covering "filtration apparatus sold as porous sheets or films of various thicknesses and densities" and U.S. Registration No. 946,685 for the same mark covering "insulated wires and cables." Because Cortex had filed a counterclaim attacking the validity of Gore's registrations, the Board did not consider Gore's registrations in reaching its decision. W.L. Gore & Assocs., Inc. v. Cortex Corp., Opposition No. 78,219, slip. op. at 6 (TTAB July 3, 1990). Instead, the Board considered evidence of Gore's use of its mark. Id. In reaching its conclusion that no likelihood of confusion exists, this court has considered Gore's registrations and its use of its mark