**W.L. GORE & ASSOCIATES,
INC., Plaintiff,**

v.

**JOHNSON & JOHNSON and Johnson
& Johnson Consumer Products,
Inc., Defendants.**

Civ. A. No. 94–502–JJF.

United States District Court,
D. Delaware.

April 21, 1995.

Robert H. Richards, III, Richards Layton & Finger, Wilmington, DE, David H. Pfeffer, Janet Dore, Midge M. Hyman, and Richard LeBlanc, Morgan & Finnegan, New York City, John S. Campbell, and David Johns,

W.L. Gore & Associates, Inc., Newark, DE, for plaintiff.

Steven J. Balick, Ashby & Geddes, Wilmington, DE, Thomas C. Morrison, and Michael J. Mellis, Patterson Belknap Webb & Tyler, New York City, Madonna M. Malin, Johnson & Johnson, for defendants.

## MEMORANDUM OPINION

FARNAN, District Judge.

## I. INTRODUCTION

Plaintiff W.L. Gore & Associates, Inc. ("Gore") commenced this trademark infringement action against Defendants Johnson & Johnson and Johnson & Johnson Consumer Products, Inc. ("J & J") on October 7, 1994. Gore claims that J & J infringed Gore's dental floss trademark registration "Glide" by use of a similar trademark for its dental floss "Easy Slide." Gore seeks to enjoin J & J from using its trademark "Easy Slide," arguing that the mark is confusingly similar to Gore's "Glide" trademark. Gore contends that consumers will confuse "Easy Slide" with "Glide" and will be more likely to purchase the "Easy Slide" floss.

In addition to its Complaint, Gore filed a Motion for Preliminary Injunction to enjoin J & J from using the "Easy Slide" trademark. (D.I. 2). For the reasons set forth in this Memorandum Opinion, the Court will deny Gore's Motion for Preliminary Injunction.

## II. FINDINGS OF FACT

In 1989, Gore entered the dental care market with its first product "Glide" dental floss. "Glide" is a premium brand of dental floss made of polytetraflouroethylene or "PTFE" fiber. The PTFE fiber used in "Glide" is stronger than that used in traditional nylon floss. PTFE is designed to resist shredding and to easily slip between teeth. (D.I. 5 at A4).

Gore began using the term "Glide" for its PTFE floss in 1989. Gore first registered the "Glide" trademark in the U.S. Patent and Trademark Office for "fibrous polymeric material for use in manufacturing dental floss" on November 13, 1990. On January 26, 1993, Gore registered the mark again for "dental floss, in Class 10". (D.I. 5 at Exs. 1, 2).

To advertise its new product, Gore promoted "Glide" by primarily relying on dentist recommendations. (D.I. 5 at A6–A7). Consumer reaction to the new floss was very positive and Gore sold substantially more "Glide" floss than originally expected. (D.I. 5 at A5). Gore maintains that it has built a solid reputation for "Glide" over the last five years and contends that "Glide"'s continuing success is contingent upon consumer recognition and satisfaction.

In 1989, J & J initiated "Project Greece" in order to develop a PTFE product to compete with Colgate's product. (D.I. 20 at 6). Because PTFE was protected by a patent, J & J sought a manufacturer to supply it with PTFE floss. (D.I. 21 at Fleming, ¶¶ 45–47). In 1990 and 1991, J & J began negotiations with various suppliers of PTFE floss, including Gore. Also, in May 1991, J & J received the results of a marketing research survey it had commissioned of possible names for its new floss and among those listed was "Easy Slide." However, by late 1991, supplier negotiations proved unsuccessful and J & J discontinued its effort to develop a marketing strategy for a PTFE floss.

Then, in 1993, facing what it perceived to be a significant competitive threat by Colgate's PTFE floss, "Precision," J & J resumed its efforts to develop its own PTFE floss. J & J selected the secondary mark "Easy Slide" for its PTFE floss, which follows the registered "Johnson & Johnson" trademark.[1] "Easy Slide" is one of sixteen J & J dental floss products on the market.

## III. CONCLUSIONS OF LAW

### A. Legal Standard

■ A preliminary injunction will be granted in a trademark infringement case when the following four factors are established: 1) the movant is likely to succeed on

---

1. J & J has secondary trademarks for three other floss products: Johnson & Johnson Dentotape; Johnson & Johnson Baking Soda; and Johnson & Johnson Fluoride. (D.I. 21 at Fleming, ¶ 15 and DX 35).

the merits at trial; 2) the movant will suffer irreparable harm if preliminary relief is not granted; 3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and 4) the preliminary relief sought is within the public interest. *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 374 (3d Cir.1992).

In order to demonstrate a likelihood of success in a trademark infringement action under the Lanham Act, the plaintiff must demonstrate that (1) the mark is valid and legally protectable; (2) the plaintiff owns the mark and; (3) the defendant's use of the mark to identify goods or services is likely to create confusion about the origin of the goods and services. *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir.1994). In this case, the first two elements of the required analysis are undisputed, and therefore, the Court will focus only on the likelihood of confusion between J & J's "Easy Slide" and Gore's "Glide".

Likelihood of confusion exists "when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir.1991)(citation omitted). Thus, the Court's analysis should be undertaken from the perspective of the ordinary consumer or "reasonably prudent buyer." *Id.* at 293; *see* 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 23.27–29 (1992). The "relevant buying class" determines the degree of caution exercised while making a purchase. *Id.* A buying class can range from discriminating purchasers to casual purchasers or may include both. *See id.* On the record before it, the Court concludes that the ordinary consumer of dental floss products exercises a casual level of care in choosing the product.

### The Scott Paper Factors

The Court of Appeals for the Third Circuit has set forth a list of factors to consider in analyzing the likelihood of confusion:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity in function; and

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir.1978); *Ford Motor Co.*, 930 F.2d at 293.

The Court will address factors one, two, four and six, since an analysis of these factors will be dispositive of the likelihood of confusion issue. *See Farberware, Inc. v. Mr. Coffee, Inc.*, 740 F.Supp. 291, 297 (D.Del. 1990) (citing *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151–52 (3d Cir.1984)).

### B. Discussion

#### 1. Similarity of the Marks

The first *Scott Paper* factor involves evaluation of the similarity of the owner's mark and the alleged infringing mark. The Third Circuit, in *Fisons Horticulture*, noted that when a conflict involves goods in direct competition with each other, "the court need rarely look beyond the mark itself" to determine likelihood of confusion. 30 F.3d at 472 (quoting *Interpace Corp. v. Lapp. Inc.*, 721 F.2d 460, 462 (3d Cir.1983)). Thus, the first element, similarity of the marks, is one of the

most probable and critical elements in the confusion analysis. *See Fisons,* 30 F.3d at 472–73; *Opticians Ass'n v. Independent Opticians,* 920 F.2d 187, 195 (3d Cir.1990). An analysis of similarity of the marks involves evaluation of the "appearance, sound and meaning of the marks, as well as the manner in which the marks are used." *Accu Personnel, Inc. v. AccuStaff, Inc.,* 823 F.Supp. 1161, 1164 (D.Del.1993); *Rockland Mortgage Corp. v. Shareholders Funding, Inc.,* 835 F.Supp. 182, 192 (D.Del.1993).

■ Gore argues that J & J's "Easy Slide" looks the same, sounds the same and has the same meaning as Gore's "Glide" mark. (D.I. 4 at 14). Gore contends that consumer confusion will come from sight and sound blending, as opposed to a side-by-side comparison of the two products. Gore insists that a consumer's memory will fade from the time he leaves the dentist's office until the time he gets to the store to purchase "Glide." At the store, Gore contends that the consumer will focus first on J & J's floss due to its dominant shelf space. These two factors, memory fade and dominant shelf space, Gore argues will cause a consumer to confuse "Glide" with "Easy Slide" and to select the J & J product. Gore encourages the Court to focus on what it believes is the dominant portion of the J & J mark, the word "Slide." Gore contends that the word "Easy" is only a modifier and drops out, leaving the consumer to consider only the rhyming words "Glide" and "Slide." Because glide and slide are synonyms, Gore argues the visual suggestion is the same for both products. As a result, Gore contends that "Glide" and "Easy Slide" are "virtually identical" and, on this basis, a finding of likelihood of confusion is warranted. *Id.*

J & J contends that the two marks are dissimilar for at least three reasons. First, J & J argues that its use of a two-word, three syllable mark is different than Gore's one-word, one-syllable mark. (D.I. 20 at 25). J & J contends that although "Easy Slide" rhymes with "Glide," the use of the word "easy" breaks-up a direct comparison between the marks and eliminates the potential for confusion. J & J asserts that while the one word rhyming mark "Slide" would have

been confusingly similar, "Easy Slide" is sufficiently different to avoid confusion.

Second, J & J contends that the use of the company name as a header further distinguishes its product from "Glide." J & J contends that the full product name "Johnson & Johnson Easy Slide," makes the mark easily distinguishable from "Glide" in both sound and appearance.

Third, J & J contends that the "Easy Slide" packaging further distinguishes the two dental flosses, removing any possible traces of confusion. Specifically, J & J's package is "a small quadrilateral white plastic container which features the JOHNSON & JOHNSON name in red script, the words dental floss in black, the Johnson & Johnson ribbon design and a statement of the particular floss ..." (D.I. 20 at 13). Also, the cardboard mount has a teal colored grid design. (*Id.* at 14). For these reasons, J & J contends that the first Scott Paper factor, similarity of the marks, does not demonstrate that a likelihood of confusion exists between the two marks at issue.

On the record before it, the Court concludes that the marks are similar, but not confusingly similar. The Court finds that the marks have a similar meaning, however, they do not have a similar appearance. The Court credits J & J's position that a two-word, three-syllable mark is dissimilar in appearance from a one-word, one-syllable mark. The Court finds a further distinction in appearance between the words glide and slide to the extent that the first letter is different in each word. *See Cortex Corp. v. W.L. Gore & Associates, Inc.,* 1993 WL 217185 (Fed.Cir.1993) (finding "Cortex" and "Gore–Tex" dissimilar in appearance). Thus, the Court is persuaded that the appearance of the marks, when written, is not likely to confuse relevant consumers.

The Court also finds that the aural similarities are limited. Although the words "glide" and "slide" rhyme, "Easy Slide" creates a different sound. "Easy Slide" has three syllables or pauses and "Glide" has only one syllable—one pause. The sound of the first letter in the rhyming words enhances the aural difference, "Slide" has a soft "s" sound and "Glide" has a hard "g" sound. The aural

similarities are further attenuated when J & J's product is called by its complete name, Johnson & Johnson "Easy Slide." For these reasons, the Court concludes that "Easy Slide" is dissimilar from "Glide" in appearance and sound, tipping the balance against a finding of likelihood of confusion.

## 2. Strength of the Mark

■ The second element to be analyzed in the confusion analysis is the strength of Gore's mark. A "strong" mark is entitled to greater protection than a "weak" mark. McCarthy on Trademarks, § 11.24[1] at 11–124. The strength of the mark measures the mark's distinctiveness and " 'its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous source.' " *Accu Personnel,* 823 F.Supp. at 1165 (quoting *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979)). There are two aspects of "strength," conceptual and commercial, and the Court must weigh the conceptual and the commercial aspects to determine the relative strength of the mark. *Rockland Mortgage Corp.,* 835 F.Supp. at 193. In *Rockland,* the court explained, "[t]he conceptual aspect is the placement of the mark on the distinctiveness spectrum, that is deciding whether the mark is 'fanciful,' 'arbitrary,' 'suggestive,' 'descriptive,' or 'generic.' The commercial aspect is the recognition value of the mark in the relevant market." *Id.*

■ The first step in determining the strength of a mark is to place the mark on the distinctiveness spectrum. If a mark is determined to be fanciful, arbitrary or suggestive, it is inherently distinctive and proof of a secondary meaning is not required. *Id.* at 188. Conversely, if the mark is descriptive, it must also have a secondary meaning to acquire distinctiveness. *Id.*

■ The second step in the strength analysis is to determine customer perception and market recognition of the mark. *Id.; see* McCarthy on Trademarks, § 11.24[1], 11–126. The more likely a consumer is to remember a mark and associate it with a product, the stronger the mark and the greater its protection. *Id.* The rationale supporting this principle is that a consumer is likely to be confused by a junior's use of a senior's famous mark.

■ A weak mark is entitled to the statutory presumptions prescribed by the Lanham Act. *Id.* at § 11.24[4], 11–131. However, weak marks are afforded less protection because consumers can "easily distinguish slight differences in the marks, even if the goods are related." *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 626 (8th Cir.1987).

Gore contends that its mark is inherently distinctive because it has been registered twice by the Patent and Trademark Office. (D.I. 4 at 16). J & J concedes that "Glide" is a suggestive mark, and therefore, inherently distinctive and protectable without secondary proof. Thus, the Court's analysis must shift to the second prong of the strength analysis: customer perception.

■ Gore contends that "Glide" has market recognition and customer perception due to Gore's aggressive marketing campaign. (D.I. 4 at 16). Gore contends that it has spent 1 million dollars annually to advertise "Glide" in dentist literature and samples. *Id.* Additionally, Gore argues that no other dental care competitors are using the word glide for their floss, solidifying a consumer's association of "Glide" with Gore's product. *Id.* Gore contends that these factors make "Glide" a strong mark entitled to greater protection.

J & J argues that the "Glide" mark is weak, despite its suggestiveness because market recognition is low. J & J offers four reasons for this: (1) glide is a common word, (2) glide suggests the attribute of the PTFE fiber, (3) glide is used in five other floss products, and (4) glide is used in a variety of *other* personal care products. (D.I. 20 at 21).

Having considered the evidence submitted, the Court finds that on balance, "Glide" is a relatively weak mark. The parties agree that "Glide" is a relatively strong mark on the distinctiveness spectrum because it suggests the underlying nature of the product. The word glide causes a consumer to imagine the product in use, slipping between teeth. However, this is only part of the strength analysis. The Court must factor the market

perception concept with distinctiveness. In this regard, the Court finds market recognition of "Glide" weak, because "glide" is a common adjective, spelled correctly to convey the word's primary meaning. At this juncture of the litigation, the Court is unpersuaded that the mark has attained popular association in the public's mind with Gore's dental floss.

Therefore, balancing the strength factors of distinctiveness and customer perception, the Court concludes that "Glide" is a weak mark.

### 3. Actual Confusion

 With regard to the fourth and sixth *Scott Paper* factors, Gore argues that J & J's use of "Easy Slide" has caused actual confusion since J & J's product entered the retail market. (D.I. 4 at 19).

Gore cites two cases in which two different grocers mislabeled J & J's product and referred to it as "Easy Glide." *Id.* In the case of a California grocery wholesaler, the mislabeling was on a computer read-out of sales statistics. A Gore sales representative detected the error when reviewing the printout, but presumably, the error was not seen by consumers.

J & J contends that this alleged confusion represents a temporary mistake regarding the correct name of the J & J product. J & J argues that these errors do not constitute "actual confusion" as to the source of the product. J & J argues that source confusion requires that consumers purchase the wrong product or be deceived as to the manufacturer of the defendant's product. *Barre–National, Inc. v. Barr Laboratories, Inc.*, 773 F.Supp. 735, 744 (D.N.J.1991).

Considering all of the evidence available at this time, the Court is persuaded that actual confusion at the consumer purchasing level has not occurred. Gore has presented no evidence that the two mislabelings reached the average consumer. Assuming that the mislabelings did reach the consumer, Gore has presented no evidence that consumers were confused as to which product to buy or the source of the product.

For all these reasons, the Court concludes that Gore has not demonstrated its likelihood of success on the merits at trial.

### C. Irreparable Harm to Plaintiff

 In determining whether injunctive relief is appropriate, a district court must also consider the extent to which the plaintiff will suffer irreparable injury if relief is denied. *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d at 378. Irreparable injury may be shown by "loss of control of reputation, loss of trade, and loss of goodwill," and by a possibility of confusion. *Id.*

 Gore contends that J & J's use of the "Easy Slide" mark has threatened its loss of control and loss of goodwill associated with the "Glide" mark. In particular, Gore contends that the properties of "Glide" and "Easy Slide" are not the same. Gore envisions a scenario in which consumers mistakenly purchase "Easy Slide," believing it to be "Glide," and find the floss unsatisfactory. From there, Gore sees an avalanche effect in which the consumer refuses to buy "Glide" and subsequently denigrates "Glide" to his family, friends, and dentists, thus eviscerating the "Glide" name. In addition, Gore asserts that its proof of confusion demonstrates irreparable injury. (D.I. 4 at 24).

The Court has already concluded that Gore has failed to demonstrate the existence of confusion among consumers. Further, the Court finds that the evidence offered by Gore does not establish that J & J's use of the "Easy Slide" mark threatens Gore with loss of control or goodwill associated with the subject mark. Thus, the Court concludes that Gore has not shown that it will suffer irreparable injury.

### D. Irreparable Harm to Defendant

 The Court, as part of its analysis, must also balance the hardships of the respective parties and determine "whether granting the requested relief will result in even greater harm to the nonmoving party." *SI Handling Sys. Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985). The Court finds that entering a preliminary injunction in favor of Gore at this stage of the litigation may

actually result in greater harm to J & J because J & J would be compelled to withdraw "Easy Slide" from the market. (D.I. 20 at 37–38). In view of the Court's finding that Gore has failed to establish the existence of actual confusion among consumers, the Court concludes that the balance of hardships does not weigh in favor of Gore.

### E. Public Interest

The final consideration the Court must consider is whether the issuance of a preliminary injunction is in the public interest. In a trademark case, public interest is "most often a synonym for the right of the public not to be deceived or confused." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d at 379 (quoting *Opticians Ass'n v. Independent Opticians*, 920 F.2d at 197). In this case, the Court finds that no persuasive evidence has been adduced to demonstrate that the public has been or will be deceived or confused and, therefore, the Court concludes that the issuance of a preliminary injunction is not in the interest of the consuming public.

### IV. *CONCLUSION*

For the reasons discussed, the Court concludes that Gore has not met its burden on the factors that need to be proven in order to obtain a preliminary injunction and, therefore, Gore's Motion for Preliminary Injunction will be denied.

An appropriate Order will be entered.