———————

No. 95-2912

———————

Duluth News-Tribune, a division          *
of Northwest Publications,               *
Inc., a Delaware corporation,            *
                                         *
                 Appellant,              *     Appeal from the United States
                                         *     District Court for the
            v.                           *     District of Minnesota.
                                         *
Mesabi Publishing Company, a             *
Minnesota corporation; Hibbing           *
Tribune Company, Inc., a                 *
Minnesota corporation,                   *
                                         *
                 Appellees.              *

———————

                 Submitted:  March 11, 1996

                    Filed:  June 3, 1996
———————

Before FAGG, BRIGHT, and WOLLMAN, Circuit Judges.
———————

WOLLMAN, Circuit Judge.

       Duluth News-Tribune, a division of Northwest Publications, Inc.,
filed this trademark infringement action against Mesabi Publishing Company
(Mesabi) and Hibbing Tribune Company, Inc., (Hibbing) under section 43(a)
of the Lanham Trademark Act, 15 U.S.C. § 1125(a) (1995) and under Minnesota
Stat. § 325.165 (1995).  After considering cross-motions for summary
judgment, the district court[1] granted judgment in favor of defendants on
all claims.  We affirm.

_____

       [1]The Honorable Michael J. Davis, United States District Judge
for the District of Minnesota.

## I.  Background

For more than 100 years plaintiff has circulated a daily newspaper, the Duluth News-Tribune, in the Northeast region of Minnesota, which includes the distinct geographic area known as the Iron Range.  Although the paper has always provided both national and regional news coverage, in 1992 plaintiff expanded the Iron Range edition to provide more local coverage.

From 1946 to the present, defendant Mesabi has published a daily newspaper, the "Mesabi Daily News," in Virginia, Minnesota, which is located in the eastern region of the Iron Range.  Since 1899 defendant Hibbing has published a paper Sunday through Friday in Hibbing, Minnesota, in the western Iron Range.  That paper, previously entitled the "Hibbing Daily Tribune," is now entitled simply the "Daily Tribune."

This controversy began when Mesabi and Hibbing, both subsidiaries of the Murphy Publishing Company, began a joint publication of a Saturday newspaper entitled the "Saturday Daily News Tribune," which they distributed throughout the Iron Range.  On July 9, 1994, in response to plaintiff's complaints about the similarity in names between plaintiff's paper and the new Saturday paper, defendants added an ampersand between the words "News" and "Tribune."

Duluth News-Tribune, unsatisfied with this change, filed suit claiming trademark infringement under the Lanham Act and trademark dilution under Minnesota law.  The district court denied plaintiff's motion for a preliminary injunction and granted summary judgment in defendants favor on all counts.

## II.  The Summary Judgment Standard

Summary judgment is proper when, after reviewing the facts in

the light most favorable to the nonmovant and giving that party the benefit of all reasonable inferences to be drawn from the facts, the court finds that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Barry v. Barry, 78 F.3d 375, 379 (8th Cir. 1996). A factual dispute is material if it might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-148 (1986). On appeal we apply this standard de novo. Barry, 78 F.3d at 379.

### III. The Lanham Act: Likelihood of Confusion

To prevail under the Lanham Act, plaintiff must prove that defendants' use of the name "Saturday Daily News & Tribune" creates a likelihood of confusion, deception, or mistake among an appreciable number of ordinary buyers as to the source of or association between the two papers. See 15 U.S.C. § 1114(1) and General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 626 (8th Cir. 1987).

In determining whether a likelihood of confusion exists, we consider the following factors: 1) the strength of the trademark; 2) the similarity between the parties' marks; 3) the competitive proximity of the parties' products; 4) the alleged infringer's intent to confuse; 5) evidence of actual confusion; and 6) the degree of care reasonably expected of potential customers. Anheuser-Busch, Inc. v. Balducci Publications, 28 F.3d 769, 774 (8th Cir. 1994), cert. denied, 115 S. Ct. 903 (1995). These factors do not operate in a mathematically precise formula; rather, we use them at the summary judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion. Factual disputes regarding a single factor are insufficient to support the reversal of summary judgment unless they tilt the entire balance in favor of such a finding. See Squirtco v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980) ("Resolution of [the likelihood of confusion] issue does not hinge on a single factor").

Accordingly, we will separately examine each factor with its corresponding relevant facts.

### A. The Strength of the Trademark

As a preliminary matter, we must determine whether plaintiff's mark is strong enough to merit trademark protection. To do this, we must classify the mark, "Duluth News-Tribune," into one of four categories: 1) arbitrary or fanciful, 2) suggestive, 3) descriptive, or 4) generic. Cellular Sales, Inc. v. Mackay, 942 F.2d 483, 485 (8th Cir. 1991). An arbitrary or fanciful trademark is the strongest type of mark and is afforded the highest level of protection. Id. at 486. At the other end of the spectrum, a generic term is one that is used by the general public to identify a category of goods, and as such merits no trademark protection. See Miller Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75, 79-81 (7th Cir. 1977) (holding "Lite Beer" to be generic), cert. denied, 434 U.S. 1025 (1978). Suggestive and descriptive marks fall somewhere in between. A suggestive mark is one that requires some measure of imagination to reach a conclusion regarding the nature of the product. See American Home Products Corp. v. Johnson Chemical Co. Inc., 589 F.2d 103, 106 (2d Cir. 1978) (holding the mark "Roach Motel" to be suggestive because "[w]hile roaches may live in some motels against the will of the owners, motels are surely not built for roaches to live in"). A descriptive mark, on the other hand, immediately conveys the nature or function of the product and is entitled to protection only if it has become distinctive by acquiring a secondary meaning. See 20th Century Wear, Inc. v. Sanmark-Stardust Inc., 747 F.2d 81, 87-88 (2d Cir. 1984) (finding "Cozy Warm ENERGY-SAVERS" to be descriptive), cert. denied, 470 U.S. 1052 (1985).

We find that the district court properly classified plaintiff's mark, "Duluth News-Tribune," as descriptive. The words convey meaning too directly to be suggestive, yet are too specific

-4-

to be generic.  The name "Duluth News-Tribune" notifies the reader that the product is a Duluth newspaper, but is too specific to describe all newspapers, or even all Duluth newspapers.  Viewing the facts in plaintiff's favor, we will also assume that the mark "Duluth News-Tribune" has acquired secondary meaning meriting trademark protection.[2]

Plaintiff attempts, however, to extend this protection beyond "Duluth News-Tribune," to the term "News-Tribune," on the theory that customers in the Iron Range refer to plaintiff's paper in shorthand form as the "News-Tribune."  Plaintiff has offered no evidence sufficient to substantiate this claim.  The only direct evidence of a customer's shorthand reference to the Duluth News-Tribune is from a customer who refers to the paper as "Duluth News."  Moreover, the widespread use of the words "news" and "tribune" throughout the newspaper industry precludes plaintiff from claiming exclusive privilege to use these words.  Thus, although the mark "Duluth News-Tribune" merits some level of protection, the shorthand "News-Tribune" merits none.

## B.  The Similarity Between the Parties' Marks

Having determined that the relevant protected mark is "Duluth News-Tribune," we must consider the similarity between that mark and defendants' mark, "Saturday Daily News & Tribune."  The use of dominant identical words in common does not mean that two marks are similar.  General Mills, 824 F.2d at 627.  Rather than consider the similarities between the component parts of the marks, we must evaluate the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products.  Id.

---

[2]We take judicial notice of plaintiff's recent registration of the trademark "Duluth News-Tribune."

Although the marks are aurally similar, when pronounced in their entirety the word "Saturday" and the ampersand in defendants' paper make the two distinguishable. Moreover, several significant visual distinctions distinguish the two marks. First, in defendants' paper the words "news" and "tribune" appear on different lines; in plaintiff's paper the words "news" and "tribune" appear on the same line. Second, defendants' title appears in two colors, i.e., red and black; plaintiff's title appears all in black. In addition, the size and style of type used by the two papers differs. Cf. Esquire, Inc. v. Esquire Slipper Manuf. Co., Inc., 243 F.2d 540, 542 (1st Cir. 1957) (giving weight to distinctive script in avoiding likelihood of confusion).

The most significant distinction, however, is the defendants' placement of a blue banner reading, "Publication of the Mesabi Daily News, Virginia and Daily Tribune, Hibbing" beneath the title. Cf. Pignons S.A. de Mecanique v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981) (otherwise similar marks are not likely to be confused when used in conjunction with clearly displayed name of manufacturer). These distinctions appear to be sufficient to notify an ordinary customer that the papers originate from two different publishers.

### C. The Competitive Proximity of the Parties' Products

Neither party contests that both papers provide regional and local news coverage and that they directly compete in the Iron Range; thus we need not further examine this factor.

### D. The Alleged Infringer's Intent to Confuse

Plaintiff alleges bad faith on the part of defendants, pointing specifically to defendants' adoption of the mark "Saturday Daily News & Tribune" and simultaneous decision to expand the Saturday edition to provide regional news coverage shortly after

plaintiff's paper extended regional coverage in its Iron Range edition. Plaintiff also points to the absence of a written agreement between Hibbing and Mesabi as evidence that defendants' "joint venture" explanation for the use of the words "Daily News & Tribune" is simply an excuse to infringe on plaintiff's mark.

We find these bare allegations to be unsupported by the record. The name "Saturday Daily News & Tribune" is a logical merger of the names "Daily News" and "Daily Tribune." The identification of defendants' paper as a joint publication appears on each individual paper. The paper's sales extend to cover both the area served by the Mesabi paper and that served by the Hibbing paper. The paper is sold in newsstands identified as belonging to either Hibbing or Mesabi, and through subscriptions to the Mesabi or Hibbing paper. Likewise, defendants announced the formation of the joint Saturday edition in each of their respective papers, clearly identifying the source of the Saturday edition. Moreover, after plaintiff's initial letter protesting the paper's name, defendants contacted the Minnesota Newspaper Association and accepted the Association's recommendation that defendants add an ampersand between the words "news" and "tribune." The record, then, reveals no evidence of bad faith on the part of defendants, leaving no genuine factual dispute regarding defendants' intent.

## E. Evidence of Actual Confusion

"[W]hen determining whether there exists a likelihood of confusion, weight is given to the number and extent of instances of actual confusion." Life Technologies, Inc. v. Gibbco Scientific, Inc., 826 F.2d 775, 777 (8th Cir. 1987). Plaintiff points to the following incidents of actual confusion: 1) plaintiff's receipt of defendants' mail and phone calls; 2) a reporter who alleges that he routinely identifies himself as working for the News-Tribune, and that on a particular occasion he was asked, "which News-Tribune?"; 3) plaintiff's receipt of phone calls asking whether the

two newspapers are associated; 4) plaintiff's receipt of a subscription form for defendants' paper; and 5) plaintiff's receipt of a reader's letter proposing corrections to an article that appeared in defendants' paper.

In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence. Postscript Enterprises v. City of Bridgeton, 905 F.2d 223, 226 (8th Cir. 1990). Applying this standard, we find that plaintiff's claim of actual confusion through misdirected mail and phone calls fails to raise a genuine factual dispute for two reasons. First, the vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the "confusion." See Davidson & Schaff, Inc. v. Liberty National Fire Insurance Co., 69 F.3d 868, 871 (8th Cir. 1996) (refusing to consider hearsay evidence); Vitek Systems, Inc. v. Abbott Labs., 675 F.2d 190, 193 (8th Cir. 1982) (affirming district court's decision to discount this type of hearsay evidence). Second, we find such evidence to be de minimis and to show inattentiveness on the part of the caller or sender rather than actual confusion. See J. Thomas McCarthy, Trademarks and Unfair Competition, § 23.2, p.52, n.1 (2d ed. 1984).

The question to the reporter who was asked to specify which News-Tribune he worked for indicates a distinction in the mind of the questioner, rather than confusion. See Fisher Stoves, Inc. v. All Nighter Stove Works, 626 F.2d 193, 195 (1st Cir. 1980) (questions about affiliations of two companies indicate that customers were aware of different product sources). The nature of the question demonstrates an understanding that at least two newspapers contain the words "news" and "tribune." Likewise, the calls questioning whether the two papers were associated demonstrate that potential customers do not automatically associate the words "news" and "tribune" with "Duluth News-Tribune."

Plaintiff next points to its receipt of a subscription form for defendants' paper.  This evidence is of little value to plaintiff, as upon defendants' inquiry the sender clarified that she subscribed to both papers and had inadvertently placed the subscription forms in the wrong envelopes.  Moreover, the fact that her check was made out to "Duluth News" cuts against plaintiff's  claim of actual confusion.

Plaintiff offers one incident of actual confusion -- a letter from a reader offering plaintiff editorial suggestions regarding an article that appeared in defendants' paper.  Although this incident provides some support for plaintiff's claim of likelihood of confusion, even several isolated incidents of actual confusion that occur initially upon the creation of a potentially confusing mark are insufficient to establish a genuine issue of material fact as to the likelihood of confusion.  <u>See Astra Pharmaceutical Prod. Inc. v. Beckman Instruments Inc.</u>, 718 F.2d 1201, 1207-08 (1st Cir. 1983) (holding that temporary confusion regarding the association of salesmen from the plaintiff's company with the defendant was insufficient to raise a genuine issue of material fact); <u>Scott Paper Co. v. Scott's Liquid Gold, Inc.</u>, 589 F.2d 1225, 1231 (3rd Cir. 1978) (holding that nineteen misdirected letters in four years were insufficient to establish likelihood of confusion).  Rather, we look to whether an appreciable number of ordinary purchasers are likely to be so misled, and here the record before us compels an answer in the negative.

**F.  The Degree of Care Reasonably Expected of Potential Customers**

In evaluating this factor, we look to the degree of care expected of an ordinary purchaser.  Plaintiff argues that because of the low cost of newspapers, ordinary buyers will exercise only minimal care in selecting one.  Although plaintiff's argument is not without some force when applied to the customer who makes a

quick stop at a convenience store to buy a paper, plaintiff ignores the reality of defendants' distribution methods. Approximately ninety-two percent of defendants' papers are sold through home subscriptions. Customers who spend the money and effort to subscribe to a newspaper are likely to know which paper they are buying, and to complain if they get the wrong one. Moreover, an additional two percent are sold through newspaper racks that clearly identify defendants as the paper's publication source. This leaves only six percent of papers sold as potential candidates for buyer confusion, a number too small to create a genuine issue of fact regarding the likelihood that an appreciable number of customers will be confused.

## IV. The Appropriateness of Summary Judgment in this Case

When, as in this case, a trademark dispute centers on the proper interpretation to be given to the facts, rather than on the facts themselves, summary disposition is appropriate. <u>Woodsmith Pub. Co. v. Meridith Corp.</u>, 904 F.2d 1244, 1247 (8th Cir. 1990).

Our evaluation of the foregoing six factors leads us to conclude that no factual dispute exists the resolution of which would allow a reasonable jury to find a likelihood of confusion. Plaintiff's trademark, though deserving of some protection, is relatively weak. Although the newspapers themselves compete directly and provide similar news coverage, the titles, as they appear on the two papers, are sufficiently distinct to allow an ordinary purchaser to distinguish between them. Moreover, the remaining factors balance in defendants' favor. We find no evidence that defendants chose their mark with the intent to infringe on plaintiff's goodwill. The evidence of actual confusion is de minimis and insufficient to establish a genuine issue of material fact. Finally, and most decisive, defendants' distribution methods ensure that the vast majority of ordinary purchasers will not be confused. Thus we affirm the district

court's grant of summary judgment on the Lanham Act claims.

## V.  State Claim:  Dilution

The Minnesota anti-dilution statute protects trademark owners from dilution of the distinctive quality of their marks notwithstanding the likelihood of confusion.  The statute defines "distinctive quality" as meaning that "the mark is inherently distinctive or has acquired distinctiveness, and the mark is well known or famous."  Minn. Stat. § 325D.165 (1995).

The Minnesota statute, which is similar to other state dilution statutes, appears to codify the common law, which has functioned to protect well-known, distinctive marks from uses that are likely to tarnish or erode the distinctive nature of the mark.  See DeRosier v. 5931 Business Trust, 870 F. Supp. 941, 948 (D. Minn 1994) (holding that the Minnesota statute simply codifies common law); See also Anheuser-Busch, 28 F.3d at 777 (interpreting Missouri anti-dilution statute, which is virtually the same as Minnesota statute, to protect against uses that tend to weaken or tarnish the unique nature of a mark).  See, e.g., Polaroid Corp. v. Polaroid, Inc., 319 F.2d 830 (7th Cir. 1963) ("Polaroid" as used in connection with the installation of refrigeration and heating systems constitutes a dilution of "Polaroid.").

The gravamen of a dilution claim is that the plaintiff's mark be particularly distinctive and well-known or famous.  We conclude that the mark "Duluth News-Tribune" is not sufficiently distinctive to merit protection under this statute.  Plaintiff cannot expect to acquire exclusive use, even in a limited area, of the common words "news" and "tribune."  Plaintiff's claim of extensive advertising does not change this fact.  See Esquire, 243 F.2d at 543 (1st Cir. 1957) ("We do not think a trader can pluck a word . . . out of the general vocabulary and appropriate it to his exclusive use no matter how much effort and money he may expend in the attempt").

Thus, we affirm the district court's grant of summary judgment for defendants on the state claim.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.