# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-2686

———————

Sensient Technologies Corporation;     *
Sensient Flavors, LLC,     *
   *
        Plaintiffs - Appellants,     *
   *   Appeal from the United States
     v.     *   District Court for the Eastern
   *   District of Missouri.
SensoryEffects Flavor Company,     *
formerly known as SensoryFlavors,     *
Inc.; Performance Chemicals &     *
Ingredients Co.; Diehl Food     *
Ingredients, Inc.; Highlander Partners,     *
L.P.,     *
   *
        Defendants - Appellees,     *

———————

Submitted: March 9, 2010
Filed:  July 21, 2010

———————

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.

———————

BYE, Circuit Judge.

Sensient Flavors appeals the district court's[1] grant of summary judgment in favor of SensoryEffects Flavor Company, formerly known as SensoryFlavors.  On

———————

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

appeal, Sensient Flavors contends the district court erred in concluding the SensoryFlavors mark was not "used in commerce" as defined by the Lanham Act, 15 U.S.C. § 1127. Sensient Flavors also asserts the district court erroneously held the SensoryEffects Flavor Company name was not likely to cause confusion to customers. Finally, Sensient Flavors argues the district court erred by holding its mark was "relatively weak" and not entitled to protection under the Missouri dilution statute. We affirm the district court's grant of summary judgment.

I

Sensient Technologies Corporation ("Sensient") sells flavor delivery systems to its customers. Since 2000, Sensient has continuously used the trade name Sensient Flavors, among its other trademarks. The mark appears on communications from Sensient Flavors, including advertising and marketing materials, business cards, letterheads and invoices.

Charles Nicolais, a former employee of Sensient Flavors' sister company Sensient Colors, Inc., left the company to start his own business called Performance Chemicals and Ingredients, LLC ("PCI"). In May 2006, PCI purchased substantially all of the assets of Diehl Food Ingredients, Inc. ("Diehl"). In November 2006, PCI also purchased substantially all of the assets, equipment, trademarks and trade names of SensoryEffects, a business engaged in development, manufacture, and sales of lipid-based flavor delivery systems. The prior owners of SensoryEffects had filed an application for the registration of the SensoryEffects name and graphic in July 2004, which was formally registered by the United States Patent and Trademark Office ("PTO") on July 3, 2007. PCI further expanded its operations in February 2008 by acquiring Givaudan Flavors, Inc., the dairy flavor systems business within Givaudan Flavors Corporation. As part of the purchase agreement, PCI was not permitted to use the Givaudan Flavors trade name for more than sixty days after the purchase.

After the purchase of Givaudan Flavors, Nicolais undertook the responsibility of choosing a new name and brand for the business. Ultimately, the company decided to use the name SensoryFlavors, Inc., building on the SensoryEffects trademark already in use. As part of this process, SensoryFlavors modified the existing SensoryEffects mark to design the new SensoryFlavors mark. The company's attorneys informed Nicolais the SensoryFlavors name was available for use and registration based on a search of PTO records and corporate names. However, the parties dispute the knowledge Nicolais maintained regarding the existence of the Sensient Flavors name at the time he was choosing the new name. Although he was previously employed by Sensient Colors, Nicolais asserts he never worked for Sensient's flavor group and therefore he was not aware of the Sensient Flavors mark before the lawsuit was filed. Thus, he contends the Sensient Flavors name did not cross his mind while choosing the SensoryFlavors name. Sensient Flavors disputes Nicolais's assertion, noting that a document drafted by one of PCI's employees prior to the purchase of the Givaudan business unit lists Sensient Flavors as one of SensoryFlavors' primary competitors.

On the day the Givaudan purchase was finalized, SensoryFlavors sent an announcement to contacts in the food ingredients industry featuring the SensoryFlavors mark. SensoryFlavors and Givaudan also sent a media release announcing the acquisition, which included the SensoryFlavors mark. SensoryFlavors asserts it only gave two presentations to customers after acquiring Givaudan Flavors on February 13, 2008, both of which occurred prior to the instant suit. Moreover, SensoryFlavors contends no sales were made under the new mark, no packages were sent bearing labels with the new mark, and no goods were transported under the new mark. SensoryFlavors also constructed the website www.sensoryflavors.com, although it states the website was "under construction" at all times and was immediately deactivated when Sensient filed the instant suit.

Shortly after Sensient filed the instant suit on March 10, 2008, the district court entered a temporary restraining order against the use of the SensoryFlavors name. SensoryFlavors subsequently changed its name to SensoryEffects Flavor Company, d/b/a SensoryEffects Flavor Systems ("SensoryEffects"), building on the prior SensoryEffects name already registered with the PTO. The company has continued to sell products and operate under this name since the change.

Sensient amended its complaint to include the new SensoryEffects name. According to Sensient, the two companies are direct competitors because they both sell flavor delivery systems to food and food ingredient companies, although their product offerings differ slightly. The initial contact with customers arises primarily through telephone calls, which leads to appointments and meetings where the company is able to present its products and services. In this sense, the ultimate sale of products is the result of an ongoing collaborative process. Sensient's complaint contained six counts, including federal trademark infringement, unfair competition, false advertising, common law trademark infringement and unfair competition, and trademark infringement and dilution under Missouri law.

The district court granted summary judgment on all counts in favor of SensoryEffects and dismissed the case. The court held a permanent injunction on the SensoryFlavors mark was not warranted because the mark had not been "used in commerce." The court also held the new SensoryEffects name was not likely to cause confusion to customers and Sensient was not entitled to protection under Missouri's trademark dilution statute. Sensient timely appeals the district court's order.

I

The district court's grant of summary judgment is reviewed de novo, and we apply the same standards as the district court. Frosty Treats Inc. v. Sony Computer Ent. Am. Inc., 426 F.3d 1001, 1003 (8th Cir. 2005). Summary judgment is

-4-

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A. Whether the SensoryFlavors Name Was Used in Commerce

First, the parties dispute whether section 45 of the Lanham Act applies to infringement cases. The Lanham Act imposes civil liability on "any person who. . . without the consent of the registrant . . . *use[s] in commerce* any reproduction . . . or colorable imitation of a registered mark." 15 U.S.C. § 1114(1)(a) (emphasis added). Section 43(a) of the Act also imposes liability for "[a]ny person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A) (emphasis added). Under section 45 of the Lanham Act, "use in commerce" is defined as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce–
> (1) on goods when–
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
> (B) the goods are sold or transported in commerce, and
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign

country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

In its brief, Sensient argues the press release, announcement, and two presentations provided by SensoryFlavors, in addition to its website, were sufficient to establish a question of fact regarding "use in commerce" of the mark under section 45. At oral argument, however, Sensient contradicted its argument by asserting for the first time that section 45 does not apply in infringement cases, and rather is limited in its application to the registration of trademarks. Sensient bases its contention largely on dicta provided by the Second Circuit Court of Appeals in Rescuecom Corp. v. Google, Inc., 562 F.3d 123, 128-29 (2d Cir. 2009), which involved an infringement dispute over search terms used by a popular Internet search engine. Rescuecom held Google's display, offer, and sale of the plaintiff's mark to advertising customers was sufficiently alleged as "use in commerce" to avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. 562 F.3d at 130-31.

After reaching its conclusion, the Rescuecom court attached a lengthy appendix analyzing whether section 45 applies in the infringement context. The court first noted the statute begins with a "guarded and tentative" limitation that the definitions provided under the statute apply "unless the contrary is plainly apparent from the context." Id. at 132 (quoting 15 U.S.C. § 1127). The court then analyzed the 1988 amendment to the statute providing that "use in commerce" means the "bona fide use of a mark in the ordinary course of trade." Id. at 132-33. According to the court, the amendment made clear that section 45's definition of "use in commerce" applies only to the registration of marks, not to infringement cases, because it is "inconceivable that the statute could have intended to exempt infringers from liability because they acted in bad faith." Id. The court believed this reading of the statute was confirmed by a Congressional report accompanying the 1988 amendment, which "explained that

-6-

the revised use in commerce definition is intended to apply to all aspects of the trademark registration process, and that clearly, however, use of any type will continue to be considered in an infringement action." Id. at 138 (citing S. Rep. 100-515 100th Cong. at 45 (1988)) (internal quotation marks omitted).

Pursuant to the amended statutory language, Rescuecom envisioned two possible interpretations of section 45 in infringement cases. The first interpretation bars application of the entire definition of "use in commerce" in the infringement context as a result of the new language in the first sentence relating to "bona fide use," as discussed above. Id. at 140. The second, and preferable interpretation would continue to apply the remainder of the "use in commerce" definition relating to goods and services in infringement cases, and simply disregard the "bona fide use" language in such cases, which would be reserved for application only in the registration context.[2] Id. Ultimately, the court noted its discussion was dicta that did not affect the result in the case, and it urged Congress to further clarify the statute. Id. at 140-41.

In this case, we express no view as to whether section 45's "use in commerce" definition continues to properly apply in infringement cases. Compare 4 McCarthy on Trademarks and Unfair Competition § 23:11.50 (4th ed.) ("The Lanham Act § 45 narrowing definition of what constitutes 'use in commerce' is just a relaxed remnant of trademark law's once-hyper-technical 'affixation' requirement. This statutory anachronism certainly was never intended to limit the scope of 'uses' that would constitute infringement") with Margreth Barrett, *Trademarks and Digital*

---

[2]The Rescuecom court believed the second approach was preferable in light of prior Second Circuit case law that applied the second sentence of the "use in commerce" definition relating to goods and services to infringement cases. While we assume without holding the second sentence of the definition similarly applies in this case, as discussed below, we note this circuit has also previously interpreted section 45 as requiring "use in commerce" as a prerequisite for infringement liability. DaimlerChrysler AG v. Bloom, 315 F.3d 932, 936 (8th Cir. 2003).

*Technologies: "Use" on the Net*, 13 No. 11 J. Internet L. 1, 9 (2010) ("[T]he Lanham Act's legislative history makes it clear that Congress intended this statutory definition [of section 45] to apply in the infringement context and to carry forward the 1905/1920 Acts' general 'affixation or other close association' requirement.'").

Although Sensient cites the Rescuecom case in its opening brief, it confines its argument to whether SensoryFlavors' limited uses of the mark meet the definition of "use in commerce" under section 45. Prior to oral argument, Sensient failed to develop any argument that section 45 did not apply to an infringement case such as the instant matter. See Cubillos v. Holder, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009) (citation omitted) (deeming an argument waived where the petitioner referenced an argument in his opening brief, but failed to develop the argument). To the contrary, Sensient explicitly concedes in its reply brief that the statute applies to infringement cases. See Appellant's Reply Brief at 1 ("The parties agree that the Lanham Act requires that a trademark be used in commerce before a finding of infringement can be made."). Under these circumstances, we assume without holding that section 45 applies to infringement cases and we will proceed to determine whether SensoryFlavors' use of its mark meets the definition of "use in commerce." See Flowers v. Norris, 585 F.3d 413, 416 n. 2 (8th Cir. 2009) (limiting review under a statute based on petitioner's concessions in his reply brief).

Applying the language of the statute, SensoryFlavors' goods must have been "sold or transported in commerce," among other requirements. 15 U.S.C. § 1127. As noted above, Sensient attempts to satisfy this requirement by pointing to SensoryFlavors' efforts to advertise and market its goods through two customer presentations, a press release, an announcement, and a website.

Sensient's argument conflates the distinction between goods and services provided under section 45. Rescuecom and the other cases Sensient relies upon involved an alleged infringer's services, not goods, and therefore the courts applied

the separate definition provided above for determining whether the services were "used in commerce." Rescuecom, 562 F.3d at 129 ("According to the Complaint, Google uses and sells Rescuecom's mark 'in the sale of Google's advertising *services* rendered in commerce.'") (emphasis added). Even in cases applying the services definition, many courts have held mere advertising is not enough to constitute "use in commerce" because "a mark is used in commerce only if it accompanies services rendered in commerce." Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco, 329 F.3d 359, 364 (4th Cir. 2003).

Sensient fails to show evidence of any sale or transport of any goods bearing the SensoryFlavors mark. While Sensient suggests Nicolais did not know for certain that no sales resulted from the two presentations, this assertion is weak at best because the two companies which received the presentations did not become customers of SensoryEffects subsequent to the name change. Binkley v. Entergy Operations, Inc., 602 F.3d 928, 931 (8th Cir. 2010) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy") (citation omitted). Because there is no evidence demonstrating any sale or transport of goods under the SensoryFlavors name, Sensient fails to establish a triable issue of fact as to whether the goods were "used in commerce," and we affirm the district court's grant of summary judgment on the SensoryFlavors mark.

B.  Whether the SensoryEffects Name is Likely to Cause Confusion

Sensient next challenges the district court's grant of summary judgment on the SensoryEffects Flavor Systems mark.  The district court held the SensoryEffects mark was not likely to cause confusion to customers.[3]

The Eighth Circuit applies a six-factor test to determine whether there is a likelihood of confusion, no part of which is dispositive standing alone:

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

Frosty Treats, 426 F.3d at 1008.  We do not apply any mathematical formula in analyzing these factors; "rather, we use them at the summary judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion."  Id.  We address each of these factors separately.

1.  The Strength of the Owner's Mark

In analyzing the first factor, we have recognized a "strong and distinctive trademark is entitled to greater protection than a weak or commonplace one."  Id.

---

[3]Sensient must show a likelihood of confusion as part of its Lanham Act claims (Count I, Count II, and Count III), Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C., 393 F.3d 755, 759 (8th Cir. 2005), its common law trademark infringement and unfair competition claim, and its Missouri statutory trademark infringement claim (Counts IV and V).  WSM, Inc. v. Hilton, 724 F.2d 1320, 1331 (8th Cir. 1984); R.S.Mo. 417.056(1).

(citing SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)). Marks may be characterized in four categories: generic, descriptive, suggestive, or arbitrary or fanciful. Id. at 1004. On this spectrum, an arbitrary or fanciful mark is entitled to the highest level of protection, while a generic mark is afforded no trademark protection. Duluth News-Tribune, a Div. of Nw. Publ'n, Inc. v. Mesabi Pub. Co., 84 F.3d 1093, 1096 (8th Cir. 1996).

In this case, the district court determined Sensient was a fanciful word coined to function as a trademark for the company. As a result, the court acknowledged Sensient's mark was entitled to the broadest protection. However, the court also concluded Sensient could not claim an exclusive right to the "Flavors" portion of the Sensient Flavors name because "Flavors" is a generic term. Accordingly, the court determined only the Sensient name was entitled to protection. On appeal, Sensient agrees "Flavors" alone is not protectable, but it argues the Sensient Flavors mark must be construed as a whole. SensoryEffects asserts courts have routinely refused to protect generic portions of a trademark.

In making its determination, the district court noted SensoryEffects did not object to its finding that the Sensient name was fanciful. Generally, we do not consider arguments raised for the first time on appeal and a party may not assert arguments not presented to the district court. Cole v. Intern. Union, United Auto., Aerospace & Agr. Implement Workers of Am., 533 F.3d 932, 936 (8th Cir. 2008). In light of SensoryEffects' concession before the district court on this point, we need not consider its arguments on appeal challenging the strength of Sensient Flavors' name.

Similarly, Sensient's argument questioning whether the district court properly analyzed its mark is largely irrelevant because the court ultimately found in favor of Sensient on the first factor. More importantly, the district court proceeded to compare the composite Sensient Flavors mark to the SensoryEffects mark later in its analysis, as demonstrated below. See, e.g., Sensient Tech. Corp. v. SensoryEffects Flavor Co.,

636 F.Supp.2d 891, 900 (E.D. Mo. 2009) ("SensoryEffects Flavor Systems sounds different than Sensient Flavors."). Thus, the district court did not err in concluding the first factor favors Sensient.

2. The Similarity of the Owner's Mark and the Alleged Infringer's Mark

Under the second step, we must consider the similarity between the Sensient Flavors and SensoryEffects Flavor Systems marks. Frosty Treats, 426 F.3d at 1008. "Rather than consider the similarities between the component parts of the marks, we must evaluate the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products." Duluth News-Tribune, 84 F.3d at 1097. "The use of identical, even dominant, words in common does not automatically mean that two marks are similar." Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987). "We may consider the marks' visual, aural, and definitional attributes and compare the trade dress of the products in determining whether the total effect conveyed by the two marks is confusingly similar." Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999) (citing Gen. Mills, 824 F.2d at 627).

The district court analyzed the evidence submitted by the parties related to the sophistication of the customer base and the collaborative process by which the products in the industry are sold. As a result of the sophisticated customers and the long, interactive purchasing process, the court determined it was highly unlikely buyers would confuse the marks, and thus the likelihood of confusion was diminished. The court also noted there was a distinct auditory difference between the marks.

The court rejected Sensient's "initial interest confusion" argument, in which it contended SensoryEffects was able to use Sensient's name to gain access to customers and begin the collaborative process leading to sales, even if the customer's initial confusion over the two companies' names dissipates during the process. The court

-12-

noted this theory has never been adopted by the Eighth Circuit, and even if it was, Sensient would still lose because it failed to show any evidence of customers experiencing such a phenomenon. Not only did SensoryEffects Flavor Systems have a distinct auditory difference from Sensient Flavors, the court held, but Sensient failed to introduce evidence showing SensoryEffects attempted to lure away Sensient's customer base by passing off its products as Sensient's.

On appeal, Sensient contends the district court correctly recited the "sight, sound, and meaning" test to determine the similarity between the marks, see id., but it erroneously considered the purchasing conditions and evidence of actual confusion in assessing the similarity of the marks. Sensient asserts the court must independently determine whether the marks appear and sound similar and evoke a similar meaning, and then separately consider whether the purchasing conditions make those similarities more or less critical. Sensient also urges this court to formally adopt the "initial interest confusion" doctrine.

We first consider the sight, sound, and meaning argument. We have continually held the use of identical dominant words does not automatically equate to similarity between marks. See Frosty Treats, Inc., 426 F.3d at 1008-09 (distinguishing the words "frosty treats" in the defendant's product from the plaintiff's "Frosty Treats" mark where the mark and trade dress were visually distinct); Luigino's, 170 F.3d at 830-31 (concluding "Lean Cuisine" and "Lean 'N Tasty" are not confusingly similar); Duluth News-Tribune, 84 F.3d at 1097 (determining "Duluth News-Tribune" and "Saturday Daily News & Tribune" were distinct, despite the aural similarity between the two marks); Gen. Mills, 824 F.2d at 627 (holding the district court did not err in finding no confusing similarity between "Oatmeal Raisin Crisp" and "Apple Raisin Crisp" because the marks were different enough to avoid customer confusion). In this case, while each mark uses the word "flavors" and begins with the "sens" prefix, these features are components of longer product names with different auditory and visual depictions. See Everest Capital Ltd., 393 F.3d at 761 ("Though each mark uses the

-13-

dominant word 'Everest,' that word is part of longer product names that employ different fonts and graphics.").

First, there are significant visual differences between the marks. Sensient's mark consists of blue capital lettering with a yellow wave slightly above the lettering. The SensoryEffects mark, on the other hand, utilizes bold black lettering in different typeface on two lines, with a multicolor swirl symbol to the left of the first line. Based on these visual distinctions, the marks are sufficiently differentiated to prevent customer confusion. See Luigino's, 170 F.3d at 831 ("The use of different colors and typefaces, as well as the prominent display of the house marks convey perceptible distinctions between the products.").

In its reply brief, Sensient contends the visual appearance of the marks is irrelevant because the point of contact between the companies and the customers generally occurs via telephone, and thus the auditory similarities should be given priority. Sensient's suggestion to place particular emphasis on the verbal effect of the marks is not without merit. See 4 McCarthy § 23:22 (4th ed.) ("Similarity of sound may be particularly important when the goods are of the type frequently purchased by verbal order."). However, we agree with the district court that the composite marks maintain a distinct auditory difference. See Duluth News-Tribune, 84 F.3d at 1097 ("Although the [Duluth News-Tribune and Saturday Daily News & Tribune] marks are aurally similar, when pronounced in their entirety the word 'Saturday' and the ampersand in defendants' paper make the two distinguishable.").

While Sensient correctly notes the purchasing conditions, confusion among customers, and similarity between the marks are three separate factors considered by the court in its analysis, our precedent is clear that we evaluate the impression the entire mark is likely to have "on a purchaser exercising the attention usually given by purchasers of such products." Id. See also Luigino's, 170 F.3d at 830-31 (analyzing whether an ordinary consumer would be likely to be confused between the two

marks). The parties agree the ordinary customer of their products is sophisticated and any particular sale is the result of a long, collaborative process. Taking into consideration the sophistication of the customers and the nature of the purchasing process, the district court correctly determined the ordinary consumer would not find the marks confusingly similar under the "sight, sound, and meaning" test.

Sensient further argues the district court erred in its application of the "initial interest confusion" doctrine. According to Sensient, most courts now recognize the doctrine, which arises when confusion creates an initial customer interest, even though no actual sale may be finally completed due to the confusion. 4 McCarthy § 23:6 (4th ed.). Sensient contends the doctrine "may be applied to a purchasing process that is drawn out over a period of time," such as the collaborative buying process at issue here. Id. However, those courts acknowledging the doctrine recognize that "[e]ven if the marks are almost identical, initial interest confusion is not assumed and must be proven by the evidence." Id.

We decline Sensient's invitation to adopt the "initial interest confusion" doctrine in this case because, even if the doctrine applied generally in this circuit, it would not apply in this case. Under the doctrine, courts look to factors such as product relatedness and the level of care exercised by customers to determine whether initial interest confusion exists. Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 296 (3d Cir. 2001). Here, although the products are similar, the parties agree the customers are sophisticated and exercise a relatively high degree of care in making their purchasing decisions. This sophistication makes it less likely customers will experience initial confusion, ultimately resulting in a benefit to the alleged infringer. Id. at 296-97. As a result, the district court correctly rejected the application of the doctrine under these facts. In sum, the district court did not err in concluding the second factor weighs in favor of SensoryEffects.

-15-

3.  The Degree of Competition Between the Products

The third factor analyzes the degree of competition between products.  Frosty Treats, 426 F.3d at 1008.  If the two companies' products are closely related, confusion among customers is more likely.  Davis v. Walt Disney Co., 430 F.3d 901, 904 (8th Cir. 2005).  The district court determined the companies' product markets differ slightly, but it ultimately held this factor weighed in favor of Sensient because the parties are direct competitors selling flavor delivery systems to food and food ingredient companies.  Neither party disputes this holding on appeal, and accordingly we conclude the district court was correct in its determination under the third factor, which favors Sensient.

4.  The Alleged Infringer's Intent to Pass Off its Goods as the Trademark Owner's

The fourth factor analyzes whether the alleged infringer intended to pass off its goods as the trademark owner's goods.  Frosty Treats, 426 F.3d at 1008.  While proof of bad intent is not required for success in an infringement or unfair competition claim, "the absence of such intent is a factor to be considered."  Id.  "Knowledge of another's product and an intent to compete with that product is not . . . equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion." Luigino's, 170 F.3d at 831.

In considering this factor, the district court first acknowledged the temporary restraining order it previously entered against SensoryFlavors, in which it noted Nicolais's selection of the SensoryFlavors name after he was previously employed by Sensient created a strong inference of his intent to confuse the public.  However, the court concluded the evidence produced after additional discovery did not support this inference because Nicolais worked for a separate division while he was employed by Sensient, and even if he maintained knowledge of the Sensient Flavors name, his

knowledge did not equate with an intent to mislead. Rather, the court determined SensoryEffects selected its name in order to capitalize its already-established mark and the goodwill established under the Givaudan Flavors name.

Sensient asserts the court ignored evidence demonstrating SensoryEffects was aware Sensient was a direct competitor prior to purchasing Givaudan Flavors and it intentionally selected similar marks. Instead, Sensient argues the court relied on the self-serving affidavit of Nicolais, who claimed he was unaware of the Sensient Flavors mark. Sensient also argues SensoryEffects was obligated to move further away from the Sensient Flavors name after the temporary restraining order was entered, such that inserting "Effects" was insufficient to meet its obligation.

In determining whether SensoryEffects intended to pass off its goods as those of Sensient's, we believe the analysis in Luigino's is instructive. In Luigino's, the owners of the "Lean Cuisine" mark alleged that Luigino's intentionally adopted a similar mark, "Lean 'N Tasty," to capitalize on the goodwill established under the "Lean Cuisine" mark. Id. The evidence before the court demonstrated that Luigino's rejected a consultant's advice to avoid the "Lean 'N Tasty" mark and it believed the low-fat "Lean 'N Tasty" entrees might be comparable to "Lean Cuisine" entrees. Id. Despite this evidence, this court determined there was no evidence Luigino's intended to capitalize on the strong "Lean Cuisine" mark. Id. The court explained that Luigino's chose the name "Lean 'N Tasty" because it wanted to avoid the word "light," it believed the word "low-fat" was overused, and because it did not agree with the consultant's recommendation to avoid the word "lean." Id. According to the court, the reference to "Lean Cuisine" only evinced an intent to compete with the product, not an intent to infringe on the mark. Id. As a result, the court held there was no genuine issue of material fact regarding predatory intent. Id.

Similarly, in General Mills, Inc., this court declined to find predatory intent on the part of the owner of the "Oatmeal Raisin Crisp" mark, despite the owner's intent

to compete with the "Apple Raisin Crisp" mark. 824 F.2d at 627. "Oatmeal Raisin Crisp" went so far as to send promotional fliers to distributors encouraging them to replace "Apple Raisin Crisp" with its product. Id. However, the court again concluded that knowledge of another's product and an intent to compete with that product does not equate to predatory intent. Id.

We believe the intent alleged by Sensient in this case is similar to the allegations in Luigino's and General Mills, Inc. While the parties strongly dispute the extent of Nicolais's knowledge of the Sensient Flavors name, our precedent demonstrates any knowledge maintained by Nicolais is not dispositive of the inquiry because knowledge of another's product and an intent to compete does not correspond with an intent to mislead. Id. Sensient alleges the inference to be drawn from the evidence is that Nicolais had an intent to confuse customers by using a name similar to Sensient Flavors; however, there is no support in the record for this assertion other than speculation.

Rather, the facts of this case are similar to Duluth News-Tribune, where the court recognized the allegedly infringing name "Saturday Daily News & Tribune" was a logical merger of the names "Daily News" and "Daily Tribune." 84 F.3d at 1097. Here, the prior owners of SensoryEffects filed an application for registration of the SensoryEffects name and graphic in July 2004, which was formally registered by the PTO on July 3, 2007. After PCI acquired Givaudan Flavors, it was not permitted to use the Givaudan Flavors name for more than sixty days after the purchase. As a result, the company decided to combine the SensoryEffects and Givaudan Flavors names to form SensoryFlavors. After this lawsuit was filed, the company changed its name to SensoryEffects Flavor Systems, incorporating the full SensoryEffects name that was already registered with the PTO. Under these circumstances, the district court was not incorrect in concluding the SensoryEffects Flavor Systems name was a logical combination of the previously-established SensoryEffects and Givaudan

-18-

Flavors names. After a careful review of the record, we conclude no reasonable jury could find in favor of Sensient on the fourth factor.

5. Incidents of Actual Confusion

Under the fifth factor, we examine the incidents of actual confusion. Frosty Treats, 426 F.3d at 1008. Although such incidents are proof of the likelihood of confusion, the plaintiff is not required to bring forth incidents of actual confusion to succeed in an infringement case. SquirtCo., 628 F.2d at 1091. In analyzing this factor, weight is given to "the number and extent of instances of actual confusion." Duluth News-Tribune, 84 F.3d at 1098.

The district court held Sensient failed to produce any evidence of actual confusion, which it noted was telling since the SensoryEffects name had been in use at the time for approximately one year. As a result, the court concluded the fifth factor weighed in favor of SensoryEffects.

Sensient contends it presented evidence detailing some customers' misguided beliefs in phone calls and correspondence where the customers thought SensoryFlavors was, in one way or another, Sensient Flavors. SensoryEffects responds Kenneth Iwanusa, National Sales Manager for Sensient Flavors, testified he knew of no lost sales, no injury to Sensient's reputation, and no incidents in which SensoryEffects benefitted from any confusion between the two companies.

As an initial matter, it is questionable whether the statements contained in Sensient's interrogatory responses purportedly establishing the customers' confusion are admissible. See id. ("In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence."). We need not answer this question, however, because assuming the statements are admissible, it is clear "even several isolated incidents of actual confusion that occur

-19-

initially upon the creation of a potentially confusing mark are insufficient to establish a genuine issue of material fact as to the likelihood of confusion." Id. Instead, we "look to whether an appreciable number of ordinary purchasers are likely to be so misled." Id. at 1099. This is not the case here, because the incidents described by Sensient show only negligible confusion after SensoryFlavors was completing its transition with Givaudan Flavors, which is insufficient to meet the burden under the fifth factor.

More importantly, the district court correctly noted the alleged incidents of confusion all related to the SensoryFlavors name, not the SensoryEffects name at issue here. Sensient concedes this fact on appeal, but notes there still may be a likelihood of confusion. Sensient's suggestion is without any support in the record, and as a result, no reasonable factfinder could determine the fifth factor favors Sensient. Therefore, the district court did not err in concluding the fifth factor favors SensoryEffects.

6. The Type of Product, Its Cost, and Conditions of Purchase

Finally, the sixth factor examines the conditions of purchase and the degree of care expected of customers. Frosty Treats, 426 F.3d at 1008. "In considering this factor, we must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." Luigino's, 170 F.3d at 831. This factor is "more important in confusion-of-source cases where the degree of care that the purchaser exercises in purchasing a product can eliminate the confusion that might otherwise exist." Frosty Treats, Inc., 426 F.3d at 1010.

In this case, the district court concluded it was well-established the parties sell their products to sophisticated customers after a collaborative process. As a result of this process, the court held the likelihood of confusion was diminished, and this factor

-20-

favored SensoryEffects. The parties do not dispute the conditions of purchase on appeal, as each concedes they are competitors with sophisticated customers. As noted in the analysis above, this factor is important in this case because it tends to mitigate any potential confusion. Id. As a result of the parties' agreement, this factor could not form the basis for a verdict in favor of Sensient, and the district court did not err in concluding this factor weighs in favor of SensoryEffects.

Appropriateness of Summary Judgment

Our evaluation of the foregoing factors leads us to conclude no reasonable jury could find a likelihood of confusion between Sensient's mark and the SensoryEffects Flavor Company mark. "As courts have repeatedly noted, the 'core element' of trademark infringement law is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." Davis, 430 F.3d at 905 (citation and internal quotation marks omitted). Under the circumstances, SensoryEffects's use of its mark does not create a likelihood that the sophisticated customer base will be confused as to who makes what product. As a result, we affirm the district court's grant of summary judgment.

C. Missouri's Anti-Dilution Statute

The district court also granted summary judgment in favor of SensoryEffects on Count Six of Sensient's complaint alleging trademark dilution under Missouri law. The statute provides for injunctive relief where there exists a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Mo. Rev. Stat. § 417.061(1). "The gravamen of a dilution complaint is that the defendant's continuing use of a mark similar to the plaintiff's mark will inexorably have an adverse effect upon the value of the plaintiff's mark, and that the plaintiff's mark will eventually be deprived of all

-21-

distinctiveness." Frosty Treats, Inc., 426 F.3d at 1011 (citation omitted). To prevail under the statute, Sensient "must show its mark or trademark was valid at common law, that its mark is distinctive, and that defendants' use of its name created a likelihood of dilution of the distinctive quality of plaintiff's mark." Cmty. of Christ Copyright Corp. v. Devon Park Restoration, 683 F.Supp.2d 1006, 1017 (W.D. Mo. 2010).

The district court began its analysis by noting, as discussed above, Sensient is a fanciful mark. The court proceeded to consider evidence of third party usage of similar marks on similar goods. According to the court, SensoryEffects introduced evidence showing another competitor in the market does business under the name "Sensus Flavors," while another corporation uses the name "Symrise." The court concluded, while the Sensient mark is fanciful, these third party uses demonstrate the mark is relatively weak. The court determined Sensient failed to introduce evidence showing its mark is distinctive, and as a result the mark was not entitled to protection under the dilution statute.

Sensient asserts it was not required to introduce evidence showing its mark was distinctive because its mark was already established as fanciful. Sensient points to its open and continuous use of the mark since 2000 on its business cards, advertising and marketing materials, and website. Sensient also contends the court erred because nothing in the statute or case law requires courts to consider third party usage as part of the dilution determination, especially where the mark at issue is fanciful. Even if this inquiry were required, Sensient argues, the court's finding its mark was "relatively weak" was not supported by the evidence in the record.

As an initial matter, we acknowledge this case is distinguishable from Steak n Shake Co. v. Burger King Corp., 323 F.Supp.2d 983 (E.D. Mo. 2004), which the district court cited in support for its holding. In Steak n Shake Co., the "steakburger" mark was a generic term not entitled to protection, in contrast to the "Sensient" mark,

which the district court already determined was a strong mark, as we also concluded above.  323 F.Supp.2d at 994-95.

Regardless of this distinction, Sensient is unable to prevail on its trademark dilution claim.  Inherent in a dilution action under Missouri law is a showing of similarity between the marks, which results in the dilution.  See Frosty Treats, Inc., 426 F.3d at 1011 ("Plaintiffs' Missouri-law dilution claim fails because the marks and trade dress at issue are so dissimilar that it would be clearly erroneous to hold that there was a likelihood of dilution.").  See also Luigino's, Inc., 170 F.3d at 832 ("To support an action for dilution by blurring, the marks must at least be similar enough that a significant segment of the target group of customers sees the two marks as essentially the same.").  As discussed above, the Sensient Flavors and SensoryEffects Flavor Systems marks are not sufficiently similar under the "sight, sound, and meaning" test.  While the "sight, sound, and meaning" test determined similarity for purposes of assessing whether a likelihood of confusion existed, the same dissimilarity prevents a finding of dilution under Missouri law.  See Luigino's, 170 F.3d at 832-33 (holding the marks were dissimilar under the "sight, sound, and meaning" test such that dilution did not occur because the customers did not see the marks as essentially the same); Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1210 (1st Cir. 1983) ("We have already noted that, while the Beckman analyzer and Astra products may be in the same broad health care field, there is sufficient dissimilarity to prevent confusion.  For the same reasons, there is sufficient dissimilarity to prevent dilution.").  As a result, Sensient's dilution claim under Missouri law fails because the marks are not sufficiently similar, and therefore there is no likelihood of dilution between the marks.

For the foregoing reasons, we affirm the judgment of the district court.

-23-

COLLOTON, Circuit Judge, concurring in the judgment in part and dissenting in part.

Applying the multiple factors identified in circuit precedent as bearing on the likelihood of confusion in a trademark infringement or unfair competition case, *see Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005), I conclude that there are genuine issues of material fact that preclude summary judgment on that ground. Because the district court dismissed claims advanced by Sensient Technologies Corporation ("Sensient") under the Lanham Act (Counts 1-3), the Missouri common law (Count 4), and Mo. Rev. Stat. § 417.056(1) (Count 5), based on its conclusion that there is no likelihood of confusion as a matter of law, I would reverse the district court's judgment in part and remand for further proceedings.[4]

I agree with the court that a reasonable jury could find that Sensient has a fanciful trademark in the name Sensient Flavors that is entitled to the highest level of protection, and that Sensient Flavors and SensoryEffects Flavor Company are direct competitors who sell flavor delivery systems to food companies. I disagree, however, that no reasonable jury could find that other factors in the analysis favor Sensient.

On the question whether the alleged infringer intends to pass off its good as the trademark owner's goods, the circumstances of this case support a reasonable inference in favor of Sensient. The president of the alleged infringer, Charles Nicolais, is a former president of Sensient Colors, Inc., a sister company of Sensient

---

[4]I concur in the judgment affirming the district court's decision on the claims relating to the SensoryFlavors mark. *Ante*, at 5-9. I also concur in the judgment affirming the dismissal of Sensient's claim under the Missouri anti-dilution statute, Mo. Rev. Stat. § 417.061(1), because this is a dispute between competitors who sell similar goods. *See Luigino's, Inc. v . Stouffer Corp.*, 170 F.3d 827, 833 (8th Cir. 1999); *Viacom, Inc. v. Ingram Enters., Inc.*, 141 F.3d 886, 891 n.9 (8th Cir. 1998); 4 J. McCarthy, *Trademarks and Unfair Competition* § 24:74 (4th ed. 2010).

-24-

Flavors. Shortly after Nicolais moved from Sensient to the defendant, the new company selected the name "SensoryFlavors" to compete with "Sensient Flavors." This led the district court to find a "strong inference of Defendant's intent to confuse the public." R. Doc. 21, at 7. After the district court preliminarily enjoined the defendant from using the name "SensoryFlavors," the company retreated to the name "SensientEffects Flavor Company," rejecting the suggestion of a company vice president to omit the word "Flavor" from the official name and parent logo. Appellants' App. 275-76. Nicolais denied in an affidavit that he was aware that the brand or trademark "Sensient Flavors" even existed, but Sensient discovered from the defendant an internal document dated February 2008 that listed "Sensient Flavors" as a "primary competitor" of the newly-named "SensoryFlavors, Inc." *Id.* at 270. The credibility of Mr. Nicolais is obviously a disputed issue for a jury.

Intent is proved by circumstantial evidence, and from these circumstances, a reasonable jury could find that the defendant, having been rebuffed in its efforts to use the name SensoryFlavors to generate confusion with Sensient Flavors, still intended to confuse the public by shifting to the name of SensientEffects Flavor Company. To be sure, we have said that "[k]nowledge of another's product and an intent to compete with that product" is not the same as intent to cause consumer confusion, *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987), but this is not a garden-variety "intent to compete" case. Sensient's contention is that the defendant knew of the "Sensient Flavors" mark and intentionally selected a very similar mark – first, SensoryFlavors and then SensientEffects Flavor Company – in order to benefit from confusion that would arise from the similarity of names. Particularly given the initial effort by a former Sensient executive to use the name SensoryFlavors, a jury reasonably could infer that the defendant's choice of the fallback name was still motivated in part by an intent to confuse consumers. *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927 (10th Cir. 1986) ("[D]eliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another," and "[t]he inference of intent is especially strong when the parties have had a prior

relationship."). The permissible inferences about the defendant's intent weigh strongly against summary judgment. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir. 2000) ("The fact that one actively pursues an objective greatly increases the chances that the objective will be achieved," and "[f]or this reason, a defendant's intent is an important factor, and can be weighed more heavily than other factors.") (internal quotations and citations omitted); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987) ("Intentional copying gives rise to a presumption of a likelihood of confusion.").

On the question of similarity of the owner's mark and the alleged infringer's mark, a reasonable jury also could find in favor of Sensient Flavors. The evidence shows that the products at issue are marketed by telephone, so it is the similarity of sound (not trade dress or logo) that is relevant. Sensient argues that SensoryEffects is likely to cause "initial interest confusion" when it uses a similar-sounding name to market its products to customers in "cold" telephone calls. The doctrine of "initial interest confusion" – "infringement based upon confusion that creates initial customer interest, even though no actual sale is finally completed as a result of the confusion" – is widely accepted, *see* 4 J. McCarthy, *Trademarks and Unfair Competition* § 23:6 (4th ed. 2010), and SensoryEffects offers no convincing reason why this court should not adopt it. In that context, the aural similarity of SENSient Flavors and SENSoryEffects Flavor (with "Company" as an immaterial add-on) is sufficient for a jury to weigh this factor in favor of the plaintiff. Of course, "the use of identical dominant words does not *automatically* equate to similarity between marks," *ante*, at 13 (emphasis added), but unlike the authorities cited by the court, *Frosty Treats, Inc.*, 426 F.3d at 1008-09; *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999); *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996); *Gen. Mills, Inc.*, 824 F.2d at 627, *visual* distinctions in trade dress do not ameliorate the harm caused by confusingly similar names where auditory similarity is the key issue. *Cf. ante*, at 14 ("Sensient's suggestion to place particular emphasis on the verbal effect of the marks is not without merit.").

That a company's customers are sophisticated does not establish as a matter of law that there is no likelihood of confusion. If the sophisticated oil traders in *Mobil Oil Corp.*, 818 F.2d 254, "might listen to a cold phone call from Pegasus Petroleum . . . when otherwise he might not, because of the possibility that Pegasus Petroleum is related to Mobil," *id.* at 259, even though the possible relationship between those entities required inferences based on knowledge of both Mobil's mark and Greek mythology, then a reasonable jury could reach a similar conclusion here. A sophisticated purchaser of flavor delivery systems might take a cold call from a fast-talking salesperson attempting to pitch a customer on behalf of "SENSoryeffects Flavor Company" when the buyer is familiar with, or accustomed to dealing with, "SENSient Flavors [Company]." Whether or not a sophisticated customer eventually would sort out the difference, the doctrine of initial interest confusion prevents an infringer from using another's mark to gain "crucial credibility during the *initial* phases of a deal." *Id*. (emphasis added).

The court relies on *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270 (3d Cir. 2001), for the proposition that careful and sophisticated customers make initial interest confusion less likely, *ante*, at 15, but *Checkpoint Systems* considered findings made by a district court *after a trial*, and held that the district court's finding of no likelihood of confusion was *not clearly erroneous*. *Id*. at 298. *Checkpoint Systems* did not hold that customer sophistication justified summary judgment against claims of initial interest confusion. The court's discussion of initial interest resolved that "[i]ts significance will vary, and must be determined on a case-by-case basis." *Id*. at 297.

Given the issues of fact surrounding several elements of the analysis, the absence of evidence of actual confusion on this record does not justify summary judgment. The other factors – the strength of the Sensient Flavors mark, the high degree of direct competition, the auditory similarity of the marks in a market characterized by telephone sales, and the evidence of intent to confuse – are sufficient

-27-

to support a finding that the defendant's mark is likely to confuse. *See Eli Lilly*, 233 F.3d at 465-66 (holding that although there was no evidence of actual confusion, "the other factors – especially the similarity of the marks, the strength of the [plaintiff's] mark, and [the defendant's] intent to confuse – strongly support[ed] the district court's ultimate conclusion" to grant a preliminary injunction under the Lanham Act). The court makes a reasonable argument that there is no likelihood of confusion, and a jury may reach that conclusion after evaluating credibility and weighing the evidence, but the record does not demonstrate as a matter of law that the court's determination is the only reasonable outcome.

For these reasons, I would reverse the grant of summary judgment on Counts 1-5 and remand for further proceedings.

_____